LILLIAN REISS, Appellant, *v.* KIRKMAN & SON, INC., Respondent.

Second Department, July 3, 1934.

*Joseph H. A. Symonds* [*Lydecker Van Riper* with him on the brief], for the appellant.

*Joel Jacobs* [*Louis H. Robinson* with him on the brief], for the respondent.

DAVIS, J. The defendant, having been sued for damages for personal injuries alleged to have been suffered by the plaintiff through the use of a certain product manufactured by defendant, sought to obtain an order pursuant to the provisions of section 324 of the Civil Practice Act and rules 140 and 141 of the Rules of Civil Practice, for the discovery of a portion of the article or property constituting the basis of the action, for the purpose of analysis.

The motion was granted and the order provided that " the plaintiff produce and discover and deliver to the attorney for the defendant " a small portion of the product, and " that the defendant may take said sample and have an analysis made thereof."

In brief, it is alleged in the complaint that the plaintiff purchased at a retail store one or more packages of this product bearing a trade name, which was represented to be valuable for general cleaning purposes and harmless to fabrics, hands and surfaces when used as directed. She says she used it in accordance with the directions on the package but that it contained ingredients " inherently dangerous and poisonous," so that her fingers, hands and arms developed inflammation, rashes, swellings and the like as a result of its use. The answer is a general denial.

Of course the defendant knows the chemical content of its product, and no doubt by tests and otherwise has satisfied itself that no harmful matter has entered into its composition. If it is mistaken in its conclusion in this respect and has represented something for common use as harmless when in fact it may be poisonous and harmful to one using it in reliance on its harmless character as represented, then the defendant may be liable in damages. But if some harmful substance has been introduced into the package since it left the control of defendant and without its fault, the rule would be otherwise. The principal issue on the trial will be whether this product is inherently and essentially harmful to the human skin.

Naturally, the chemical elements of the product will become a matter of proof. The plaintiff will attempt to trace her ailments to this proximate cause and to eliminate other probable causes. On the part of the defendant efforts will be directed to show that the contents are harmless when used as directed and that no such results as plaintiff claims would flow from its use. An analysis of

the product would readily disclose, both to plaintiff and defendant, whether or not the contents of this package are the same as are generally contained in those offered for sale. Each will have an equal opportunity to have such analysis made by a skilled person of his own choice. Then if harmful elements are discovered it may become a question of fact as to whether they have been introduced through the fault of the defendant or by some tampering with the package after it left the latter's control.

We think that such a situation as this was one of the conditions contemplated when the remedy of discovery was furnished. The purpose of the legislation was to promote the presentation of the facts in aid of justice, so that parties would not need to go blindly into a trial with no knowledge of what evidence might develop. Such methods of procedure facilitate a trial and aid in seeking the truth upon which justice should be based. Rule 141, above cited, requires the court to make such order " as justice requires."

The remedy, like many others, has widened in its scope in the light of experience and with the progress of science. Photographs and telephone messages as evidence were originally of questionable competency; and, still later, examination of property in litigation was denied. (*Sutter* v. *City of New York*, 89 App. Div. 494.) This court formerly did not permit X-ray photographs to be taken on an examination in a personal injury case, but eventually it yielded to the weight of authority in other departments. (See *Gimenez* v. *Great A. & P. Tea Co.*, 236 App. Div. 804.) There has been a gradual, progressive development along the similar lines of examination and discovery. (See *Beyer* v. *Transit Development Co.*, 139 App. Div. 724; *Donoghue* v. *Callanan*, 152 id. 162; *Hayt* v. *Brewster, Gordon & Co., Inc.*, 199 id. 68; *Bianchi* v. *New York Tel. Co.*, 223 id. 730.) In the *Hayt* case the defendant was permitted to take a small sample of plaintiff's blood for examination and analysis to determine whether, in an action for personal injuries, the condition from which plaintiff was suffering resulted from the accident or a pre-existing disease.

The principles governing examination and discovery before trial are so well established and so generally understood by the profession that discussion thereof in an opinion would scarcely be warranted if it were not for two conflicting decisions at Special Term. In *Beauty Silk Manufacturing Co., Inc.*, v. *Krumholz* (141 Misc. 204) it was held discovery would not be made to permit tests by chemicals or otherwise. In *Lehmann, Inc.*, v. *Turtle Brothers, Inc.* (149 Misc. 744), a contrary conclusion was reached. We approve the result in the latter case as representing the modern doctrine on the subject.

The order should be affirmed, with ten dollars costs and disbursements, the sample to be delivered to the attorney for the defendant within five days from service of a copy of the order herein.

LAZANSKY, P. J., KAPPER, CARSWELL and TOMPKINS, JJ., concur.

Order granting defendant's motion for discovery affirmed, with ten dollars costs and disbursements, the sample to be delivered to the attorney for the defendant within five days from service of a copy of the order herein.