THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BESTLINE PRODUCTS, INC., et al., Appellants.

First Department, April 26, 1976

*Michael B. Jeffers* of counsel *(David Fleischer* and *John H. de Boisblanc* with him on the brief; *Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel,* attorneys), for appellants.

*Sheldon Horowitz* of counsel *(Samuel A. Hirschowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for respondent.

LANE, J. The Attorney-General instituted a special proceed-

ing pursuant to subdivision 12 of section 63 of the Executive Law, seeking to enjoin Bestline Products, Inc. and Bestline, Inc. (hereinafter referred to collectively as Bestline) from commission of deceptive acts and practices in the conduct of their business and further seeking restitution on behalf of those who invested with the respondents.

Bestline is involved in the marketing and selling of its cleaning products for home use. The sales force personnel recruited by Bestline were classified as local, direct, or general distributors and earned commissions based on the volume of products sold. Preliminary to becoming a distributor, a person would be solicited to attend an "opportunity meeting" usually held in a hotel or motel. During the meeting, employees of Bestline or distributors of its products would laud the products and distributorship opportunities. The atmosphere was made conducive to recruiting new personnel by public announcement and delivery of large bonus checks. The speakers would iterate that large sums of money would be earned by local distributors and even greater sums could be earned by building an organization of direct distributors and becoming a general distributor. Of course, a concomitantly larger investment would then be needed.

The misrepresentations of Bestline alleged in the petition of the Attorney-General include overstatements of potential profits, overstatements of salability of Bestline products and of customer receptivity, and the minimal training and effort required to reap a return of fantastically large sums of money. The alleged misrepresentations, based on allegedly unfounded opinion, are printed in the recruiting pamphlets of Bestline, which pamphlets also contain a disclaimer of responsibility for any misrepresentations. Refund and cancellation provisions inserted in the contract were in most cases illusory.

The Attorney-General, after receipt of both oral and written complaints, conducted an investigation culminating in the institution of this proceeding. It is represented that the Attorney-General is in possession of between 250 to 300 complaints.

Bestline, pursuant to CPLR 408, has sought discovery of the names of the complaining witnesses, opportunity to conduct EBTs, and discovery of the documents upon which the Attorney-General will rely.

Special Term denied the discovery motion of Bestline and directed a trial to resolve the allegations and denials of deceptive practices. I would modify the determination of Spe-

cial Term to the extent of directing that the Attorney-General disclose the names and addresses of the complaining witnesses and allow EBTs of those witnesses. In a civil proceeding, the disclosure of that which is "material and necessary" (CPLR 3101, subd [a]) has been liberally interpreted as including "any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" *(Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406).

The number of witnesses who may ultimately be deposed, resulting in possible delay of a trial on the merits, must be measured against the fact that the information sought is apparently material to be used as evidence in chief or for rebuttal or cross-examination and should not be denied, the test for acquisition of this material being that of usefulness and reason *(Allen v Crowell-Collier, supra,* pp 406-407). If Bestline is shown to be proceeding with discovery in bad faith, the Attorney-General may then take appropriate action.

Furthermore, even material prepared for litigation is discoverable upon a showing of special circumstances (CPLR 3101, subd [d]). Clearly included in this material is the revelation of names and addresses of witnesses of the occurrences or transactions in issue *(Rios v Donovan,* 21 AD2d 409; *Peretz v Blekicki,* 31 AD2d 934).

In the case at bar, Bestline cannot in any way prepare itself for the trial directed by Special Term absent investigation of the broad allegations of its misrepresentations made by persons whose identities are in the hands of the Attorney-General. The paucity of material available to Bestline and the broadness of the allegations combine to provide sufficient special circumstances to warrant granting of the disclosure requested.

The mere fact that in this proceeding we are dealing with the State rather than a private person does not bar granting the disclosure herein sought (CPLR 3102, subd [f]).

Furthermore, our recent decision in *People v Volkswagen of Amer.* (41 AD2d 827) does not mandate denial of discovery. In *Volkswagen,* the Attorney-General sought an injunction against alleged false advertising. The respondent in that case sought to examine all the Assistant Attorneys-General involved in the investigation and sought names and addresses of those persons allegedly deceived by the advertising. The court there held that the Assistant Attorneys-General could not be

examined since they were acting as counsel for the State and were not parties to the suit. As to the names and addresses sought, the court found that their production was premature and, in any event, they were characterized as "work product for impending litigation" and not discoverable absent a showing of special circumstances. This characterization by the court clearly shows that names and addresses of witnesses are within the ambit of CPLR 3101 (subd [d]) and makes them conditionally discoverable rather than absolutely privileged (cf. CPLR 3101, subd [c] with CPLR 3101, subd [d]; McKinney's Cons Laws of NY, Book 7B, Practice Commentary by David D. Siegel, §§ C3101:26-C3101:29, inclusive).

The witnesses who, I suggest, are subject to disclosure proceedings are limited to that group which participated in the transaction and not the broad spectrum of witnesses alluded to in the dissenting opinion.

However, I concur with Justice SILVERMAN that since the documents sought for discovery were not specifically designated, they are not discoverable (CPLR 3120, subd [a], par 1, cl [i]; *Rios v Donovan,* 21 AD2d 409, 413).

Accordingly, the order of the Supreme Court, New York County, denying discovery proceedings and directing a trial on the issue of deceptive practices, should be modified on the law and in the exercise of discretion to the extent of directing disclosure of the names and addresses of the witnesses to the transactions involved, and otherwise affirmed without costs or disbursements. Any applications concerning the scheduling of examinations should be made at Special Term.

SILVERMAN, J. (dissenting). I would affirm the order below denying disclosure.

Any defendants are entitled to know what they are charged with, and specifically here appellants ("respondents" below; hereinafter "Bestline") are entitled to know what misrepresentations they are alleged to have made, at what meetings and by whom these misrepresentations were made and in what respects they were false. That is properly the function of a bill of particulars.

But neither procedurally nor substantively is this what Bestline seeks. Instead it seeks a generalized "discovery" which will not necessarily give it the information to which it is truly entitled, and will impose an impractical and useless burden on the Attorney-General and on many persons not

parties to the case who have the misfortune to be on the Attorney-General's list of "potential" witnesses.

In its moving papers, Bestline never specified what disclosure it sought. The notice of motion merely asked for "discovery pursuant to CPLR § 408." The supporting affidavit is hardly more specific, though there is a reference to "discovery regarding the specific incidents complained of."

In its brief on appeal, Bestline became somewhat more specific and expansive. It asked "disclosure of the Assistant Attorney General * * * in order to ascertain the parameters of the factual materials to be introduced at trial"; this the majority is denying. In addition, in its main brief, Bestline asks "to obtain disclosure of the persons whose affidavits are annexed to the Amended Petition and of any other persons identified as being possible witnesses by the Assistant Attorney General." As the brief progresses, Bestline also "seeks the right to take discovery by examination before trial of these specific witnesses to ascertain what their testimony will be in order to refute it"; and also wants "the documents upon which it [the State] intends to rely at trial."

To begin with, I suggest that most lawyers do not know which witnesses and documents they are going to present until the final preparation shortly before trial; even that is subject to developments at the trial. But it is an impractical burden to ask lawyers months in advance of trial to decide which witnesses and which documents they are going to present.

We are not after all dealing here with a physical accident or even an oral contract where it may be assumed that there are four or five people who saw or heard the critical events and whose identity and the fact that they are going to be called as witnesses the lawyers may fairly be expected to know almost from the beginning of the case. Instead, we deal here apparently with many mass "opportunity meetings" attended presumably by large numbers of people some of whom are known now and some of whom may become known at any time through the trial, and from among whom trial counsel may not be able to make a final selection until very close to the trial itself.

Again there is no specification of which witnesses and which documents are to be "discovered." Are the witnesses only to be those the Attorney-General claims to have been defrauded? How about, perhaps, business practice witnesses who might

testify that the goods sold were overpriced, or accountants or statisticians who might testify that Bestline's major source of income is the sale of distributorships and not of goods? And how about all of the subsidiary witnesses who may identify documents, or testify to all kinds of incidental facts which may bear on the ultimate issues of the case?

With respect to documents, there is no effort to meet the ordinary requirement of "specifically designated documents" CPLR 3120 (subd [a], par 1, cl [i]), a requirement reaffirmed by this court in *Rios v Donovan* (21 AD2d 409, 413).

Of course there is no suggestion by Bestline of an offer to turn over to the Attorney-General a list of its potential witnesses and all of the documents it expects to use at the trial.

Finally, I note that this casual unfocussed practice motion, and the leisurely interlocutory appeal from the decision below, have now brought all other proceedings in the case to a standstill for nine months. And the roving commission to examine unspecified numbers of "witnesses" does not promise an early final judgment.

MURPHY, J. P. (dissenting in part). Because of "[t]he paucity of material available to Bestline and the broadness of the allegations" referred to by Justice LANE, I would go further and also require the People to disclose the documents on which they intend to rely to establish wrongdoing. Only then can Bestline be in a position to avoid going "blindly into a trial with no knowledge of what evidence might develop." *(Reiss v Kirkman & Son,* 242 App Div 77, 79.)

LUPIANO and BIRNS, JJ., concur with LANE, J.; MURPHY, J. P., dissents in part in an opinion; SILVERMAN, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on July 22, 1975, modified, on the law and in the exercise of discretion, to the extent of directing disclosure of the names and addresses of the witnesses to the transactions involved, and otherwise affirmed, without costs and without disbursements. Any applications concerning the scheduling of examinations should be made at Special Term.