Michael Petruk, Respondent, *v.* South Ferry Realty Company, Defendant-Appellant and Third-Party Plaintiff-Appellant. Acker & Man, Inc., Third-Party Defendant-Respondent.

Second Department, November 26, 1956.

534

*Patrick E. Gibbons* for appellant.

No appearance for respondent.

*William H. Purzner* for third-party defendant-respondent.

WENZEL, J. Michael Petruk, a window cleaner, instituted an action against South Ferry Realty Company, Inc., the owner of a building, to recover damages for personal injuries allegedly sustained when the bolt of a window cleaner's safety anchor broke, leaving him dangling by his safety belt from the other anchor. The safety anchor was a device containing a bolt, which was fastened to the building, with a portion protruding from the building and terminating in a head larger in diameter than the rest of the bolt. The window cleaner attached his safety belt to the exposed head. This head and a small portion of the broken bolt were recovered after the accident and the remainder of the device was removed from the building. These articles were in the owner's possession until the first trial.

The window cleaner claims that the bolt broke because it was defective. It seems that, for his prima facie case, he intends to rely upon the mere happening of the accident and the provisions of the Labor Law and the Industrial Code of the State of New York. Rule 21–4.9 of the Industrial Code (N. Y. Off. Comp. of Codes, Rules & Regulations, pp. 624, 625), which relates to the protection of persons engaged in window cleaning, provides that safety anchors shall be made of approved corrosion-resistant rolled alloys, and, if forged, properly annealed after forging, and free from imperfections. Such metal " shall be so processed as to conform to the best current practices to minimize segregation, oxides, flaws and internal stresses and shall have a minimum tensile strength of not less than 55,000 pounds per square inch with an elongation of at least 25 per cent in two inches ". (Industrial Code, rule 21–4.9.1.)

The owner served a third-party complaint upon Acker & Man, Inc., the alleged installer of the safety anchor, claiming that, if the window cleaner was injured because of a defective safety anchor, the fault was that of the installer which, the owner claims, designed and patented the device.

Both actions came to trial before the court and a jury. During the trial, the owner moved for leave to make metallurgical tests of the broken safety anchor, but this motion was denied on the ground that application should be made to the Special Term for such relief. The trial continued for several days and resulted in a mistrial. When the mistrial was declared the court, at the request of the installer, impounded the bolt which was an exhibit.

The owner then moved at Special Term to have the following metallurgical tests made of the broken bolt: (1) a tensile strength test to be performed on a 5-inch section of the bolt to be cut from the center section of the 9½-inch bolt; (2) a chemical analysis of a section to be cut from the neck end of the bolt, and (3) a microscopic examination of the polished surface of the neck section. A diagram of the safety anchor was annexed, showing the portions to be cut and showing where the cut surface was to be polished for microscopic examination. The edges of the break on the long part of the bolt and the paint on the head of the bolt were not to be disturbed. Citing rule 21 of the Industrial Code, the owner contended that the examinations would scientifically determine whether the bolt complied with the requirements as to composition, adequate tensile strength and proper annealing after forging, and would thus indicate the cause of the failure and when the defect occurred, i.e., whether in the forging operations,

or otherwise. The owner appeals from the order denying that motion without prejudice to an application to the trial court for similar relief.

When the primary action was commenced, appellant could have made such scientific tests of the bolt as it deemed proper, destructive though they might be of the article, since it owned and controlled the broken parts of the safety anchor. But destructive tests would have made appellant subject to bitter criticism before a jury for the alteration of such an important article of evidence. After the bolt had been marked in evidence at an examination before trial, destructive tests undertaken unilaterally by appellant would have rendered it subject to criticism for materially altering or destroying such an important exhibit that had been marked in evidence. Appellant states that the analysis and inspection were postponed so that the respondents could examine the exhibit and so that the court could determine that no rights would be interfered with if the proposed examinations were made. The impounding of the exhibit by the trial court, at the request of the installer, prevented any destructive tests except by leave of the court or, possibly, by consent of the respondents.

No contention is now made that the bolt is not under the control of the respondents or their agents and that therefore the basic principles governing discovery and inspection do not apply (see, e.g., *Bederman* v. *Brooklyn Trust Co.*, 169 Misc. 394). Nevertheless, the motion was not for a discovery and inspection of an article owned and in the control of an adverse party which objected to the application, and in which the moving party sought approval of scientific tests that would materially alter or destroy an important article of evidence which could not be tested by sample, as in the case of fungible goods.

The object of a judicial investigation is, if possible, to obtain the truth in its entire fullness and do exact justice (*Hatfield* v. *Saint Paul & Duluth R. R. Co.*, 33 Minn. 130). "The purpose of the legislation was to promote the presentation of the facts in aid of justice, so that parties would not need to go blindly into a trial with no knowledge of what evidence might develop. Such methods of procedure facilitate a trial and aid in seeking the truth upon which justice should be based." (*Reiss* v. *Kirkman & Son*, 242 App. Div. 77, 79.) Rule 141 of the Rules of Civil Practice provides that the court shall make such order " as justice requires ".

The administration of justice profits by the progress of science. Resort should be had to scientific tests wherever the

results disclosed by the tests can aid or elucidate the just determination of legal controversies (*Frank* v. *Chemical Nat. Bank of N. Y.*, 5 Jones & Sp. 26, 34). The narrowing down of areas of dispute by scientific means aids in the administration of justice (see, e.g., *Del Ra* v. *Vaughan*, 2 A D 2d 156).

The installer states that it cannot now disclose what it intends to prove and the manner in which it intends to prove its defense with respect to the exhibit but contends that the proposed examination would result in material destruction or alteration of the evidence and would prevent it from proving substantial facts upon which its entire defense is predicated.

Undoubtedly there are cases in which an order of Special Term, granting a discovery and inspection involving scientific tests, might be prejudicial to the interests of a party and easily subject to the commission of fraud by the party seeking the discovery and inspection (*Cardot* v. *Ball*, 263 App. Div. 788). But the factual situation in that case is distinguishable from the one in the case now at issue. The third-party action seems fundamentally to be dependent upon the results of such tests as are sought. The respondents do not show how their interests will be prejudiced if the tests take place before the exhibit is shown to the jury instead of afterwards.

To order the tests made under the supervision of the trial court, only after the exhibit has been examined by the jury, might unduly prolong the trial. In view of the congestion of the jury calendars for the trial of negligence actions, all reasonable efforts should be made to avoid the prolongation of trials and to facilitate the disposition of cases without resort to trial. The denial of the motion without prejudice to an application to the trial court presupposes a trial. In this case, it seems that the interests of the respondents can be safeguarded although the examination takes place before, instead of during, the trial.

Prior to the tests, the respondents should be permitted to examine and photograph the exhibit. The tests should be made as described in the moving papers and the head of the bolt and the broken ends should not be marred. If the parties cannot agree upon the person or persons who are to make the tests, Special Term should make such designation. The expense of the tests should be borne by the appellant and copies of the reports of the tests should be furnished to the respondents. Respondents should be notified of the time and place of the tests and, if they so elect, may have representatives present at such tests.

The order should be reversed, without costs, the motion should be granted, without costs, and the matter should be remitted to the Special Term to enter an order, to be settled on notice, not inconsistent herewith.

NOLAN, P. J., UGHETTA, HALLINAN and KLEINFELD, JJ., concur.

Order reversed, without costs, motion granted, without costs, and the matter remitted to the Special Term to enter an order, to be settled on notice, not inconsistent with the opinion herein.