### No. 27596

**Roland Dale Cameron v. The District Court in and for the First Judicial District of the State of Colorado, and The Honorable George G. Priest, one of the judges thereof.**

(565 P.2d 925)

Decided June 6, 1977.

Levine, Pitler & Westerfeld, P.C., Robert L. Pitler, for petitioner.

The Honorable George G. Priest, pro se.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This is an original proceeding seeking relief in the nature of prohibition. C.A.R. 21. The petitioner is the plaintiff in a personal injury action which is pending before the respondent court. He filed a products liability claim alleging that a defective tire proximately caused the personal injuries which he suffered. In the course of a hearing on a defense request for a protective order, the trial judge entered an order which denied the plaintiff the right to conduct certain "destructive" tests upon the allegedly defective tire. We issued a rule to show cause. We now make the rule absolute and remand with directions.

The complaint alleges that the plaintiff purchased a retreaded tire and elected to mount the tire by himself, using equipment at a service station. While attempting to seat the tire bead, he inflated the tire and the bead ruptured. As a result of the rupture, the tire literally exploded off the metal wheel, and the plaintiff suffered severe, disabling, and permanent injuries.

The carcass of the tire in question was originally manufactured by Uniroyal, Inc. Thereafter, the tire was sold by Uniroyal to National Cooperative, which, in turn, distributed the tire through an unknown dealer. The tire was then purchased at retail and used by some unknown persons until it was acquired by the Kearns Tire Company for retreading as a snow tire. Kearns Tire Company retreaded the tire and sold it to the Direct Sales Tire Company, which subsequently sold it to the plaintiff.

The plaintiff asserted a claim for personal injuries against Kearns Tire Company and the Direct Sales Tire Company as defendants. The defendants joined Uniroyal and National Cooperative as third-party defendants. Thereafter, the defendants and third-party defendants had the tire

examined by various experts who expressed conflicting opinions as to the cause of the tire failure. All of these experts employed x-ray and other "non-destructive" testing techniques.

To prepare for trial, the plaintiff sought an order which would permit his expert to cut out certain portions of the tire so that the characteristics of the inner wire strands on both sides of the break could be examined and tested by metallurgical means. The defendants sought a protective order to prevent "destructive" testing because the procedure would alter the appearance of the ruptured area and seriously hamper further tests upon the tire. The plaintiff contended that the proposed metallurgical tests were necessary and provided his only means for proving that the tire was defective. The trial court denied the plaintiff's request for destructive testing and granted the defendants' motion for a protective order.

## I.
### Review by original Proceeding

It is clear that the trial court did not act in excess of its *jurisdiction* in denying the plaintiff's request or entering the protective order in this case. *See Curtis, Inc. v. District Court*, 186 Colo. 226, 526 P.2d 1335 (1974); C.R.C.P. 26, 34. The mere fact that an error by the trial court, acting within its jurisdiction, may later be corrected on appeal is not dispositive of this court's original jurisdiction, however. *See Weaver Construction Co. v. District Court*, 190 Colo. 227, 545 P.2d 1042 (1976); *cf., Denver & Rio Grande W.R.R. v. District Court*, 141 Colo. 208, 347 P.2d 495 (1959). In particular, significant cases of where the posture of the litigation is such that no adequate remedy exists, may justify this court's invocation of its supervisory powers by means of original jurisdiction. *See Weaver Construction Co. v. District Court, supra*; *Lucas v. District Court*, 140 Colo. 510, 345 P.2d 1064 (1959). Accordingly, an original proceeding provided the only means for review of the order which is before us in this case.

## II.
### Destructive Testing

The substantive issue is one of first impression in this jurisdiction. While matters of discovery are generally left to the discretion of the trial court, the special nature of "destructive" testing requires that some standards be established for the guidance of trial courts.

Our discovery rules, patterned after the Federal Rules of Civil Procedure, provide several devices for ferreting out the relevant and necessary facts prior to trial. The purposes behind the discovery rules are to eliminate surprise at trial, discover relevant evidence, simplify the issues, and promote expeditious settlement of cases without the necessity of going to trial. *See Curtis, Inc. v. District Court, supra*; *Lucas v. District Court, supra*; *Crist v. Goody*, 31 Colo. App. 496, 507 P.2d 478 (1972); *see generally* 4 J. Moore & J. Lucas, *Moore's Federal Practice*

¶26.02[2] (1976). Consistent with these remedial purposes is the range of discovery available to each party. C.R.C.P. 26(b)(1) provides:

"Parties may obtain discovery *regarding any matter*, not privileged, which is *relevant* to the subject matter involved in the pending action. . . . *including* the existence, description, nature, custody, *condition*, and location of any books, documents, *or other tangible things. . . .*" (Emphasis added.)

 In applying our discovery rules, our courts have consistently adhered to basic principles furthering the broad policies behind the rules. First, the rules should be construed liberally to effectuate the full extent of their truth-seeking purpose. *See Crist v. Goody, supra; see generally Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1959). Second, in close cases, the balance must be struck in favor of allowing discovery. *See Curtis. Inc. v. District Court, supra.* Third, the party opposing discovery bears the burden of showing "good cause"[1] that he is entitled to a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." C.R.C.P. 26(c). *See Curtis, Inc. v. District Court, supra.*

 In the case before us, the plaintiff is the owner and presumably in custody of the tire upon which he wishes to perform the tests. Ownership is, of course, not a license to alter evidence which may be crucial to both sides in the dispute.[2] Here, however, the plaintiff correctly brought the matter before the trial court for a judicial determination prior to administration of the destructive test. While the posture of this case does not fit exactly within the language of C.R.C.P. 34 (production of object for inspection and testing), insofar as the tire was not in the "possession, custody, or control of the [other] party," we hold that the appropriate analysis is parallel to that involved in a conventional request for inspection under C.R.C.P. 34 and a resulting motion for a protective order under C.R.C.P. 26.

---

[1] In 1970 F.R.C.P. 34, the federal counterpart of our Rule 34, was modified to eliminate the "good cause" requirement which served as a condition precedent to the right of discovery under the rule. *See generally* 4A *J. Moore & J. Lucas, Moore's Federal Practice* ¶34.01 (1975). Our rule now reflects an identical change. *See* C.R.C.P. 34. Inspection and testing, within the bounds of relevancy, are thereby permitted without judicial supervision and simply upon request. By contrast, a party *opposing* discovery under Rule 34 must still comply with the showing of "good cause" required for a protective order. *Compare* C.R.C.P. 34(a) *with* C.R.C.P. 26(c) *and* F.R.C.P. 26(c).

[2] While the fact of "ownership" may have significance in some cases, such as where the object to be inspected or tested has significant value outside the context of the litigation, we find no basis for creating special rules on the basis of ownership in this case. Some courts have ascribed special status to objects "owned" by the plaintiff. *See State ex rel. State Farm Mutual Automobile Insurance Co. v. Rickhoff*, 509 S.W.2d 485 (Mo. App. 1974); *Petruk v. South Ferry Realty Co.*, 2 App. Div.2d 533, 157 N.Y.S.2d 249 (1956). We express no opinion here as to the due process or other parameters of a trial court's restriction on what a litigant can do with his own property.

Our rules explicitly provide that a party may, within the guidelines noted above, "test . . . any tangible thing." C.R.C.P. 34. *Destructive* testing, however, is not a matter of right, but lies in the sound discretion of the trial court. *See, e.g., Sarver v. Barrett Ace Hardware, Inc.*, 63 Ill.2d 454, 349 N.E.2d 28 (1976). The dilemma which arises when the proposed test will somehow alter the original state of the object requires that a balance be established based upon the particular facts of the case and the broad policies of the discovery rules. A balance must be struck between the "costs" of the alteration of the object and the "benefits" of ascertaining the true facts of the case. Alternative means of ameliorating those "costs," such as the use of detailed photographs to preserve the appearance of the object, or use of other samples for the test, are relevant to the creation of the balance. Likewise, alternative non-"destructive" means of obtaining the facts should be considered in evaluating the putative benefits of the tests. The problem becomes especially difficult where the object to be tested is unique and one side intends to use it in its "original" state at trial.

The petitioner in this case claimed that under any theory of the case then before the court, the proposed metallurgical test might well be "dispositive," and that metallurgical testing was the only means to determine the facts relevant to his theory of the case. This contention was not questioned below and remains uncontested in this proceeding. Accordingly, we find no basis for discounting plaintiff's contention that the proposed test is reasonable and necessary to proof of his case and would be of considerable utility to all parties in determining the actual cause of the break.

In denying the plaintiff's request for the test, the trial court based its ruling on conclusions that (1) the proposed test would alter the appearance of the break to the detriment of the defendants, and (2) the request was not timely.[3] Under the facts of this case, we find these conclusions insufficient to outweigh the conceded benefits of discovery.

First, the damage or alteration of appearance that would result from the removal of the wires is not clear.[4] However, the record establishes that the present condition of the tire has already been viewed and subjected to tests by numerous experts on behalf of all interested defendants in this case. Therefore,

---

[3]The trial court also suggested that the test results might raise "new issues" which would be "in the nature of an amendment to the complaint." Whatever the ultimate merits of this contention might be, it is clearly a matter of speculation and not ripe for review at this point. Insofar as the proposed test goes to matters which are relevant, conjecture about the subsequent posture of the case cannot be used to bar proper discovery.

[4]It appears from the affidavits and briefs before us that removal of the wires will entail stripping back some of the rubber surrounding those wires. However, the record is devoid of any clear indication of the relationship between this operation and the "markings" on the rubber bead which the defendants contend are relevant. Insofar as the record before us contains only a few brief affidavits, and no testimony at the hearing, this court stands in a position equal to that of the trial court in reviewing the facts with regard to this issue.

any resulting alteration in appearance will not impair the development of expert opinion in this case. The principle argument here appears to go to the appearance of the tire to the trial jury. The fact that the visual appearance of the tire and the details of the break area can generally be captured by competent photography or by other means militates against use of this factor to deny development of other expert opinions in this case. Insofar as the defendants' theory of the case is that the plaintiff placed too much air pressure in the tire, it would seem that the physical indicia of overinflation would not be limited exclusively to the location surrounding the break. This is unlike the plaintiff's theory of the case, in which the physical properties of the metal wires in the bead *at the point of the break* are crucial.

 Second, we disagree with the trial court's conclusion that this request was so tardy as to merit its denial altogether. The action was commenced in April 1975. The trial date of April 19, 1977, was set on April 2, 1976. The plaintiff's request for the destructive test was made on March 16, 1977, and conditioned upon completion of the test within two weeks. Discovery in this case was complex, involving inspection and tests upon the tire, wheel, and innertube by various experts. The last defendant did not complete its inspection and return the tire *until* March of 1977. Further, the conflicting opinions of the various experts did not immediately surface and reveal the utility of the metallurgical testing at issue in this case. A request for destructive testing compels that the court insure that it is not undertaken until *after* other testing procedures have been completed by the parties. A late demand or the timeliness of the plaintiff's request is a factor, but in this case it does not appear that the application was dilatory or for purposes of delay. Accordingly, we do not find that the timing in this case is dispositive of the issue.[5] *See Cairns v. Chicago Express Co.*, 25 F.R.D. 169 (N.D. Ohio 1960) (Rule 34 request for documents allowed 2 1/2 years after accident where plaintiff was unable to otherwise procure information during that period); *Farr v. Delaware, L. & W.R.R. Co.*, 7 F.R.D. 494 (S.D.N.Y. 1944); *Canty v. Great Lakes Transit Corp.*, 2 F.R.D. 156 (W.D.N.Y. 1941) (Rule 34 to be liberally construed; inspection of vessel two years after accident allowed).

---

[5]The realities of a crowded docket cannot be ignored in the modern judicial world. On the other hand, to allow considerations of time scheduled *for trial* to dominate a court's perception of the proper administration of justice is shortsighted. Denial of the plaintiff's request here apparently insures an extended trial on the merits, based upon an incomplete version of the truth. By allowing the requested tests, the results may well facilitate prompt settlement of the case. Accordingly, the most fundamental policies of our rules of civil procedure — expedient resolution of controversies based upon knowledge of the whole truth — are furthered by performance of the tests in this case. *See Foster-Lipkins Corp. v. Suburban Propane Gas Corp.*, 72 Misc.2d 457, 339 N.Y.S.2d 581 (Sup.Ct. 1973); *Petruk v. South Ferry Realty Co.*, 2 App.Div.2d 533, 157 N.Y.S.2d 249 (1956).

■ Finally, the court below did not indicate, and we perceive no basis for, any suggestion of bad faith or overreaching by the plaintiff in this case. This is, of course, a special factor to be considered in all cases of destructive testing. *See State ex rel. Crawford v. Moody*, 477 S.W.2d 438 (Mo. App. 1972); *Petruk v. South Ferry Realty Co.*, 2 App.Div.2d 533, 157 N.Y.S.2d 249 (1956).

An analysis parallel to the above has been applied in other jurisdictions. In *Petruk v. South Ferry Realty Co., supra*, the plaintiff, a window cleaner, was injured when a bolt attached to his safety anchor broke. The broken parts of the bolt were in his possession, and he requested permission to cut the bolt roughly into thirds for performance of tensile strength tests. The plaintiff also requested that another section be removed from the area of the break for chemical analysis. Liability in that case turned on the physical and chemical properties of the bolt. Holding that the defendants had not shown how their interests would be prejudiced, and relying on the principle that judicial investigation should aim at the ascertainment of the truth, the court approved the "destructive" tests. *See Petruk v. South Ferry Realty Co., supra.*

The analysis in *Petruk* has been followed or approved in numerous decisions. `See Sarver v. Barrett Ace Hardware, Inc., supra* (holes drilled into face of hammer which allegedly caused injury to plaintiff); *Foster-Lipkins Corp. v. Suburban Propane Gas Corp.*, 72 Misc.2d 457, 339 N.Y.S.2d 581 (Sup.Ct. 1973) (destructive tests on propane gas cylinder which allegedly caused injury to plaintiff); *State ex rel. Remington Arms Co. v. Powers*, 552 P.2d 1150 (Okla. 1976) (dictum); *see also Williams v. Continental Oil Co.*, 215 F.2d 4 (10th Cir. 1954), *cert. denied*, 348 U.S. 928, 75 S.Ct. 341, 99 L.Ed. 728 (1955) (applying F.R.C.P. 34 to allow test of oil well to determine direction of drill hole, despite evidence that oil well shaft might collapse as result; result based on fact that test was only known method to determine true facts); *Edwardes v. Southampton Hospital Association*, 53 Misc.2d 187, 278 N.Y.S.2d 283 (1967) (destructive testing of intermedullary pin in malpractice action allowed); *Scully v. Farragut Refrigeration Co.*, 207 Misc. 798, 140 N.Y.S.2d 614 (1955). *But see Home Insurance Co. v. Cleveland Electric Illuminating Co.*, 7 Fed.R.Serv.2d 731 (N.D. Ohio 1959) (where object sought to be tested was unique and "even slight damage would reduce its value as an exhibit," testing of object denied because damage could not be corrected prior to trial); *State ex rel. Crawford v. Moody, supra* (plaintiffs alleging injury from gas explosion not allowed to excavate underground gas pipe embedded in concrete wall).

The overriding practical concern in this case of "destructive" testing has been the formulation of methods for providing full discovery while preserving the rights of all parties to the litigation. *See, e.g., Martin v.*

*Reynolds Metals Corp.*, 297 F.2d 49 (9th Cir. 1961) (compensation for damages); *Sarver v. Barrett Ace Hardware, Inc., supra*; *Foster-Lipkins Corp. v. Suburban Propane Gas Corp., supra* (opportunities for testing of object and discovery of results of destructive tests); *Edwardes v. Southampton Hospital Association, supra* (notice and presence of parties at testing; discovery of results by all parties; division of costs); *Petruk v. South Ferry Realty Co., supra*, (prior opportunity to examine and photograph metal bolt; specific limits on areas to be destroyed; allocation of costs; full discovery of test results; notice of time and place of tests and opportunity to observe).

In allowing the "destructive" tests in this case, we do not adopt a general rule favoring destructive testing in all cases. In order to protect the interests of the defendants in this case, the trial court should enter a protective order which provides for at least the following: (1) adequate opportunities for the defendants to photograph or otherwise record the character and condition of the tire prior to the destructive testing, (2) notice to the defendants of the time, place, and exact manner of the destructive testing, (3) reasonable opportunity for the defendants and their experts to observe and record the procedures involved in the destructive testing, (4) the right of the defendants to conduct or participate in similar tests with a portion of the sample to be tested, (5) provision for discovery of the results of the plaintiff's tests, (6) allocation of costs as justice may require. The trial court may also impose such other conditions relating to the destructive testing as may be necessary to protect the interests of the parties to this action.

Accordingly, we make the rule absolute and remand with directions to proceed in a manner consistent with the views expressed herein.