637 P.2d 378 (1981)
Janice C. SHERMAN, Petitioner,
v.
The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, Colorado, and James C. Flanigan, one of the Judges thereof, Respondents.
No. 81SA406.
Supreme Court of Colorado, En Banc.
November 30, 1981.
*380 Kenneth R. Fish, Denver, for petitioner.
Stuart L. Boulter, P. C., Stuart L. Boulter, Denver, for respondents.
LOHR, Justice.
In this original proceeding under C.A.R. 21, we directed the respondent Denver District Court to show cause why the petitioner's motion to compel discovery of certain hospital records for use in her personal injury action against that hospital should not be granted. We conclude that denial of the motion constituted an abuse of discretion which cannot be adequately remedied on appeal; therefore, we now make the rule absolute.
Janice R. Sherman (petitioner) brought an action in Denver District Court against St. Anthony Hospital Systems (St. Anthony) and two doctors who practice at a hospital owned and operated by St. Anthony. In that action the petitioner sought damages for injuries sustained as the result of a spinal operation performed on her on January 9, 1979, by the defendant doctors at St. Anthony's hospital. The operation included a bone graft. Severe infection developed at the graft site, and the petitioner alleged that it resulted from bacterial contamination caused by the defendants' negligence.
The petitioner served written interrogatories and a request for production of documents on St. Anthony. One of the interrogatories requested information as follows:
Identify any document received from or prepared by JCAH [Joint Commission on Accreditation of Hospitals] and related to each and every JCAH on-site survey conducted at the hospital during the period of time from January 1, 1977 to the date of your responses to these Interrogatories;...
The request for production of documents asked for any documents identified in response to the above-quoted interrogatory, as well as the following additional documents:
The agenda, minutes, notes, reports, findings, summaries, recommendations, directives, or studies prepared by or for, submitted to or received from the hospital infection control committee during the period of time from September 1, 1978 through April 30, 1979.
St. Anthony objected to the quoted interrogatory and to the request for production of documents to be identified in response to that interrogatory on the basis that "such information is confidential and promulgated for remedial purposes only. See also C.R.S. 1973, as amended, XX-XX-XXX and XX-XX-XXX." It also objected to producing the hospital infection control committee documents "on the grounds that the requested information is confidential. See C.R.S.1973, as amended, XX-XX-XXX."
The petitioner then moved to compel discovery of the information and documents which St. Anthony had declined to furnish. After a hearing, the trial court by written order denied that motion insofar as it relates to the information and documents here in dispute. The order does not reflect the reasons for the court's ruling. The petitioner then brought this original proceeding, contending that the trial court's ruling constituted a gross abuse of discretion and significantly disadvantages the petitioner *381 in her preparation for trial. She alleges that appellate review would not provide an adequate remedy.
Preliminarily, we note that our consideration of the issues is hampered by the absence of a record. Neither the materials sought to be discovered nor a transcript of the proceedings in the trial court is before us. Under these circumstances we cannot determine definitively whether the requested material is subject to discovery in whole or in part. We elect to review the objections generally, set forth the applicable standards, and remand the matter to the trial court for further proceedings. See generally, City and County of Denver v. District Court, Colo., 607 P.2d 984 (1980).

I.
We start with the familiar rule that, unless otherwise limited by an order of court, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." (Emphasis added). C.R.C.P. 26(b)(1). No claim is made that the materials sought are not relevant; rather, St. Anthony resists discovery solely on the basis that the information is privileged.[1]
CRE 501 identifies the sources of applicable privileges as follows:
Except as otherwise required by the Constitution of the United States, the Constitution of the State of Colorado, statutes of the State of Colorado, rules prescribed by the Supreme Court of the State of Colorado pursuant to constitutional authority, or by the principles of the common law as they may be interpreted by the courts of the State of Colorado in light of reason and experience, no person has a privilege to:
* * * * * *
(2) Refuse to disclose any matter; or
(3) Refuse to produce any object or writing; or
* * * * * *
This rule applies to all stages of this action, CRE 1101(c), and so is applicable to pre-trial discovery.
As sources of its claimed privilege, St. Anthony relies on three statutes, section 13-21-110, C.R.S.1973 (1980 Supp.); section 13-90-107(2), C.R.S.1973 (1980 Supp.); and section 12-43.5-101 et seq., C.R.S.1973 (1978 Repl. Vol. 5).[2] It also founds its claim of privilege on considerations of public policy independent of a specific statutory basis. We shall address each asserted source of privilege in turn.

II.
We first consider whether documents related to the JCAH on-site surveys or to the activities of St. Anthony's hospital infection control committee are confidential and not subject to discovery by reason of section 13-21-110, C.R.S.1973 (1980 Supp.). That statute provides in pertinent part:
(1) Any information, data, reports, or records made available to a utilization review committee of a hospital or other health care facility, as required by state or federal law, is confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee ...
(2) As used in this section, `utilization review committee' means a committee established for the purpose of evaluating the quantity, quality, and the timeliness of health care services rendered under the `Colorado Medical Assistance Act' and *382 in compliance with Titles XVIII and XIX of the federal `Social Security Act.'
Thus, to be privileged, the information sought must meet two requirements: (1) it must be furnished to a utilization review committee, defined as a committee formed for the purpose of evaluating the quantity, quality and timeliness of services rendered under the Colorado Medical Assistance Act and Titles XVIII and XIX of the federal Social Security Act; and (2) it must be information provided to that utilization review committee in order to satisfy requirements of state or federal law.
We first note that there has been no finding as to the purposes of the JCAH on-site surveys or the infection control committee. Only if these bodies have been established or employed for the purposes prescribed by section 13-21-110(2), C.R.S. 1973, is the privilege provided by that section potentially applicable.
Additionally, it is necessary to determine whether any or all of the requested documents consist of information provided to those bodies in order to satisfy requirements of state or federal law. Our review of the Colorado Medical Assistance Act, section 26-4-101 et seq., C.R.S.1973 (1980 Supp.) and the regulations promulgated under it, see 10 CCR 2505-3, discloses no statutes or rules indicating that any of the information sought by the petitioner falls within the confidentiality protection of section 13-21-110, C.R.S.1973 (1980 Supp.), and St. Anthony has directed us to none. The utilization review committee function with respect to requirements of federal law is explained in 42 U.S.C.A. 1395x(k) (West 1974). Subsection (1) thereof establishes the variables to be monitored and the purpose of that review. Subsection (2) prescribes the composition of the utilization review committee. Subsection (3) requires particularized review in case of in-patient hospital services or extended care services furnished to an individual during a continuous period of extended duration. Subsection (4) concerns the required notifications in case the utilization review committee determines that a patient's further stay in the institution is not medically necessary. See also 42 U.S.C.A. § 1396b(i)(4) (West 1974) (incorporating the utilization review plan requirements of 42 U.S.C.A. 1395x(k), supra, unless an alternate review procedure of greater efficacy has received administrative approval).
Therefore, the trial court's task upon remand is to determine whether JCAH or the hospital infection control committee performs a "utilization review committee" function. Even if they do, the court must determine whether any part of the JCAH and hospital infection control committee documents consist of "[I]nformation, data, reports, or records made available to a utilization review committee of a hospital ... as required by state or federal law...." Section 13-21-110(1), C.R.S.1973. Only those portions, if any, of the information sought which have been supplied to the utilization review committee for purposes of compliance with applicable federal or state law are confidential and protected from discovery. An inspection of the documents in question, and perhaps additional testimony, will be required to resolve the merits of this claim of privilege.

III.
St. Anthony also asserts that the JCAH and infection control committee materials are privileged by reason of section 13-90-107(2), C.R.S.1973 (1980 Supp.).[3] That statute provides:
The medical records produced for use in the review provided for in subparagraphs (III) and (IV) of paragraph (d) of subsection (I) of this section shall not become public records by virtue of such use. The identity of any patient whose records are so reviewed shall not be disclosed to any person not directly involved in such review process, and procedures shall be adopted by the state board of medical examiners to insure that the identity of the patient shall be concealed during the review process itself.
*383 This subsection is a part of the codified physician-patient privilege, amended by Colo.Sess.Laws 1976, ch. 89, at 525-26, and now found at section 13-90-107(1)(d) and (2), C.R.S.1973 (1980 Supp.). Subsection (1)(d) states the nature and scope of the privilege. Subsections (1)(d)(I)-(1)(d)(IV) prescribe specific contexts in which the privilege shall not apply, and subsection (2) provides that production of documents for purposes of two of these exceptions does not render those documents public records.
Upon remand, the trial court must determine whether production of all or any of the requested documents would impinge upon the physician-patient privilege. Again, only those portions, if any, of the information sought which fall under this privilege should be protected from discovery. The trial court may be guided in its inquiry by our previous consideration of the nature and extent of this privilege. See e. g., People v. Reynolds, 195 Colo. 386, 578 P.2d 647 (1978); Community Hospital Association v. District Court, 194 Colo. 98, 570 P.2d 243 (1977). Even if that privilege is applicable, the court should determine whether one of the prescribed statutory exceptions applies. Section 13-90-107(1)(d)(I)-(IV). Although their relevance to the present discovery request is not apparent, we decline to express any view on this question in the absence of an adequate record. Once more, an inspection of the records and perhaps additional evidence will be necessary to resolve these issues.

IV.
Similarly, we cannot determine from the material available whether there is merit to St. Anthony's claim that section 12-43.5-101 et seq., C.R.S.1973 (1978 Repl. Vol. 5) creates a privilege for the materials sought. This statute relates to procedures for review and evaluation of the quality of care being given to patients by a physician. It is a peer review procedure. The trial court must resolve this claim on remand based upon review of the materials, supplemented by additional evidence if necessary.

V.
Finally, we inquire whether the public benefits which flow from open, candid communication between hospitals and hospital inspection committees are so substantial, and whether they would be so impaired by the prospect of public disclosure, that we should recognize a privilege for such communication, even without specific authorization in traditional sources. See CRE 501.
We first note that other jurisdictions faced with a similar issue have reached differing results. In a leading case the United States District Court for the District of Columbia found an overwhelming public interest in the confidentiality of hospital review committee meetings and, on this basis, accorded them a qualified privilege. Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C.1970); aff'd mem., 479 F.2d 920 (D.C.Cir.1973); see also, Gillman v. United States, 53 F.R.D. 316 (S.D.N.Y.1971); Dade County Medical Association v. Hlis, 372 So.2d 117 (Fla.App.1979). A contrary result was reached with respect to a hospital infection control committee report in Davidson v. Light, 79 F.R.D. 137 (D.Colo.1978); see also, Robinson v. Magovern, 83 F.R.D. 79 (W.D.Penn.1979); Davison v. St. Paul Fire & Marine Insurance Co., 75 Wis.2d 190, 248 N.W.2d 433 (1977); Nazareth Literary & Benevolent Institution v. Stephenson, 503 S.W.2d 177 (Ct. of App.Ky.1973); see generally, 81 A.L.R.3d 944, § 3 (1977 and 1981 Supp.). As these cases demonstrate, considerations of public policy bring different courts to different results, depending upon whether the public interest in confidentiality of hospital inspection committee matters or the public interest in liberal discovery is weighed more heavily in the balance.
We are aware that, in the context of statutory construction, we have acknowledged the important public interest in confidentiality of hospital inspection committee data and have taken it into account in giving an expansive reading to the statutory privilege for physician peer review committee records contained in section 12-43.5-102(3)(e), C.R.S.1973 (1980 Supp.). Posey v. *384 District Court, 196 Colo. 396, 586 P.2d 36 (1978). See also Tucson Medical Center, Inc. v. Misevch, 113 Ariz. 34, 545 P.2d 958 (1976); Matchett v. Superior Court, 40 Cal. App.3d 623, 115 Cal.Rptr. 317 (1974); Oviatt v. Archbishop Bergan Mercy Hospital, 191 Neb. 224, 214 N.W.2d 490 (1974). However, recognition of that public interest in the context of statutory interpretation is a different matter from judicial creation of a broad privilege in the face of conflicting public policy considerations. We conclude that it would be inappropriate to take that further step.
We think it significant that our General Assembly has not elected to create an all-inclusive privilege for hospital inspection committee information. Instead, it has chosen to identify particular types and sources of information in the health care area which merit privileges protecting the data from disclosure. See section 13-21-110(1), C.R.S.1973; sections 13-90-107(1)(d) and (2), C.R.S.1973 (1980 Supp.); section 12-43.5-102(3)(e), C.R.S.1973 (1978 Repl. Vol. 5). Thus, the legislature has implicitly rejected the approach now advocated by the petitioners.
In considering the appropriateness of the asserted privilege, we also must be mindful of the policy reflected in C.R.C.P. 26 that discovery procedures to secure information relevant to the subject matter of the action must be allowed to proceed without interruption or obstruction. Seymour v. District Court, 196 Colo. 102, 581 P.2d 302 (1978); Lucas v. District Court, 140 Colo. 510, 345 P.2d 1064 (1959). The discovery rule must be liberally construed. Cameron v. District Court, 193 Colo. 286, 565 P.2d 925 (1977); see also, C.R.C.P. 1.
In view of the selective approach which the General Assembly has adopted in creation of privileges relating to physicians and hospitals, and the general policy of our rules favoring liberal discovery, we conclude that it would not be appropriate to expand the area of privilege absent legislative action. Accordingly, we decline the invitation to create a new privilege.

IV.
The trial court must require St. Anthony to furnish the requested material for judicial in camera inspection. On the basis of that inspection and such additional evidence as the trial court in its discretion may require or permit, that court should make appropriate findings of fact and conclusions of law and should rule on St. Anthony's objections on the basis of the criteria herein set forth. In order to facilitate appellate review the trial court should seal and preserve copies of the materials examined and held not discoverable. See generally, Martinelli v. District Court, Colo., 612 P.2d 1083 (1980).
We make the rule absolute and direct the trial court to proceed in accordance with the views expressed in this opinion.
NOTES
[1] St. Anthony has not sought a protective order under C.R.C.P. 26(c); in resisting discovery, it relies entirely on its claim of privilege.
[2] In its brief St. Anthony relies on all three statutes to support its claim of privilege for the hospital infection control committee documents but bases its privilege for JCAH records on section 13-21-110 only. In its objections to the requested discovery, section 13-90-107 was listed as an additional source of privilege for the JCAH records, but was not relied on to protect the infection control committee records. Sections 12-43.5-101 et seq. are referred to for the first time in St. Anthony's brief. In view of these confusing and somewhat inconsistent claims we elect to discuss the applicability of each statute as the possible source of a privilege for all of the materials sought.
[3] See n. 2, supra.