**Carroll WRIGHT, Plaintiff-Appellee,**

**v.**

**COMMERCIAL UNION INSURANCE COMPANY, Defendant-Appellant.**

**No. 86–8404.**

United States Court of Appeals, Eleventh Circuit.

June 9, 1987.

Jon B. McPhail, McKenzie & McPhail, Wayne D. Taylor, Atlanta, Ga., for defendant-appellant.

Patrick J. Araguel, Jr., Columbus, Ga., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and LYNNE *, Senior District Judge.

HILL, Circuit Judge:

Plaintiff Carroll Wright [1] commenced this diversity action alleging that Commercial Union Insurance Company had failed to pay damages under an insurance contract. The jury returned a verdict in favor of Wright, finding that the damage sustained to the plaintiff's business property was a result of a covered catastrophe. Appellant brought this appeal, alleging that: (1) the jury's verdict was not sufficiently supported by the evidence, (2) the district court erred in admitting evidence of the plaintiff's terminal illness, (3) the jury was improperly instructed as to waiver of various conditions of the insurance contract; and (4) newly discovered evidence mandates a retrial. We affirm the district court's denial of a motion for new trial and motion for judgment notwithstanding the verdict.

On July 22, 1984, the roof of the First Avenue Pool Room in Columbus, Georgia collapsed. Prior to the accident, Carroll Wright, owner of the pool hall had purchased from Commercial Union a policy insuring the building. This policy covered certain named perils such as wind and hail but did not include damage resulting solely from rain. At trial, the primary factual dispute was whether the collapse was a result of a downward wind shear or whether the collapse was caused by the excessive weight of the roof and improper drainage.

On the evening of July 22, 1984, a storm dumped 4.9 inches of rain on Columbus, Georgia. After the storm had passed, Carroll Wright and his wife went to their business, the First Avenue Pool Hall, to inspect the property. Upon arriving, Wright noticed that a glass window was broken and that water was seeping from underneath the door. Fearing that someone had broken into the pool hall, Wright called the police. Four to five squad cars arrived. With drawn shotguns, police officers prepared to storm the premises. Upon opening the front door, a deluge of water poured from the building. Wading through calf deep water, the officers realized that the roof of the building had collapsed during the storm.

On July 23, 1984, Wright notified Commercial Union of the damage to the building. After investigating the claim, Commercial Union refused to pay, contending that the damage was a result of rain rather than wind. Wright commenced this suit alleging breach of the insurance contract. A jury returned a verdict in favor of Wright for $48,000 ($30,000 for damage to real property and $18,000 for damage to personal property).

## I. SUFFICIENCY OF THE EVIDENCE

■ Commercial Union contends that Wright failed to produce any evidence that the collapse of the roof was caused by wind. Thus, Commercial Union argues that the court erred in failing to direct a verdict in its favor. A motion for a directed verdict should be denied, "if there is substantial evidence ... of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). However, the court must consider all evidence, not just the evidence favoring the nonmovant. *Worsham v. A.H. Robins, Co.*, 734 F.2d 676 (11th Cir.1984). Here, plaintiff presented sufficient evidence to create a jury question as to whether the roof collapse was a result of wind.

■ The basis of the plaintiff's claim centers upon the testimony of William Stahl, plaintiff's expert witness. Stahl testified that rain alone could not have caused the collapse of the roof. He further testi-

---

\* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. At oral argument, counsel for the appellee informed the court that plaintiff Carroll Wright died while this appeal was pending. No formal motion to substitute the personal representative of the deceased has been made pursuant to Fed.R.App.P. 43(a). Nevertheless, we shall proceed with this appeal as if the motion had been made and the appropriate party substituted.

fied that if there had been no wind on the night of July 22, 1984, the collapse would not have occurred. This conclusion was arrived at primarily through a process of elimination. After weighing a section of the roof, Stahl estimated the dead load which the roof bore. The stress caused by 4.9 inches of water standing on the roof was added to this figure. Stahl then compared the total stress resulting from dead load and standing water with the load which the roof was capable of bearing. To determine the strength of the roof, bricks supporting the roof were subjected to laboratory tests; by crushing the bricks in a hydraulic press, Stahl determined that the brick corbels supporting the roof had not produced the collapse. After eliminating the possibility of the brick corbels being sheared off, Stahl, based upon an examination of the structure, was able to identify the weak link in the roof as a particular steel truss. The stress which the truss was capable of bearing was then determined. Accordingly, Stahl was able to determine that the dead weight of the roof along with the standing water was insufficient to produce the collapse. He therefore concluded that the additional stress upon the roof had been produced by a downdraft of 64 to 44 miles per hour.

The jury heard sufficient evidence from which it could have concluded that such a downdraft of wind occurred. Thomas J. Floyd, a retired meteorologist for the United States Weather Bureau, testified that gusts of wind on the evening of July 22nd reached 40 miles per hour at the airport. He further testified that meteorological equipment is not capable of measuring downdrafts of wind. Evidence was presented that the force of the storm was greater in the vicinity of the building as opposed to the airport. Testimony was received from witnesses who observed the force of the wind, darkness of the clouds, and severity of the lightning. Hail was seen in some areas. Witnesses were also called to describe the aftermath left by the storm. Pine trees were bent under the force of the wind; trash cans and a garbage dumpster had been thrown about in the vicinity of the building. A rental car business on the same block as the pool hall suffered damage from roofing material being peeled up by the wind; signs, tires, and other materials were thrown about the premises. Another business in the area suffered damage as a result of a sign being blown off a roof top. The strength of the wind was also sufficient to move a 2000 pound fiberglass pool a distance of twenty feet.

Thus, the jury was presented with evidence (1) that the weight of rain alone was not sufficient to collapse the roof, and (2) that the area in the vicinity of the pool hall bore the brunt of a severe windstorm. The jury was also permitted to view the building and was directed to observe the buckled trusses, the condition of the roofing material and the supporting brickwork.

Appellant Commercial Union contends that the plaintiff failed to present any evidence that a downdraft occurred. Noting that the plaintiff's expert had not previously inspected damage due to downdraft, Commercial Union contends that the plaintiff's expert merely assumed the existence of a downdraft without any basis for such an assumption. In contrast to the testimony of William Stahl, Commercial Union's expert testified that wind played no part in the collapse.

Based on the arguments and evidence before us, we might very well find in favor of Commercial Union under a *de novo* standard of review. Sitting as an appellate body, however, this court is limited to reviewing the sufficiency of evidence presented to the jury, and we conclude that the verdict was supported by the evidence.

■ Commercial Union attacks the credibility of the plaintiff's expert due to several changes which the expert made in his calculations; these changes resulted in his estimation of the windspeed being dropped from 75 m.p.h. to 44–64 m.p.h. Such a variance in calculations by the expert goes to his credibility, not the sufficiency of the evidence.

One of the primary disputes between the experts involved the weight of the roofing material. Five days after the collapse, Commercial Union's expert took a sample

of roof from the site. This sample was weighed so that the total weight of the roof could be calculated. The sample used was completely saturated with water. Wright's expert took a sample from the roof 2½ months after the collapse. This sample was dry. Thus, the calculations by the two experts as to the dead weight of the roof differed greatly. Just prior to the collapse, roofers had installed a thin sheet of synthetic material over the entire roof. The general manager of the roofing company who performed this work testified that the roof could not have leaked after this waterproofing procedure was performed. He also testified that a core sample taken before the synthetic material was applied indicated that the roofing material was dry. In light of this testimony, the jury could reasonably have concluded that the roofing material was dry at the time of the collapse and that the sample taken by Commercial Union's expert became saturated between the time of the collapse and the time it was weighed five days later.

William Stahl's testimony was subject to bitter attack by Commercial Union's expert. The evidence presented by Commercial Union, however, does not strip the opinion rendered by Stahl of its probative value. The district court properly left the resolution of this battle between the experts to the hands of the jury.

■ Commercial Union also contends the verdict should be set aside as excessive. Specifically, Commercial Union argues that an award of $30,000 for damage to the real property was not supported by the evidence. This argument is without merit. Evidence was introduced showing that Wright was offered $55,000 for the real property prior to the collapse. He was offered $25,000 for the same property after the building had been damaged. This arms-length negotiation as to the purchase price of the property is sufficient evidence to support the amount of damages awarded.

## II. ADMISSIBILITY OF EVIDENCE OF PLAINTIFF'S TERMINAL CANCER

■ At trial, Carroll Wright testified that he suffered from terminal cancer.

Commercial Union promptly objected to the admissibility of this testimony. Wright testified that drugs taken during chemotherapy had affected his memory, which accounted for the fact that he did not promptly submit a signed statement of loss with the insurance company. At trial, Wright's counsel made the following argument:

I think his mental condition after this loss and the treatment that he was having and all is very important because I think that [Commercial Union's counsel] is going to make the claim that Mr. Wright never filed a proper claim with this insurance company. And I believe it's important to show what his state of mind was and what his state of health was at the time that all this was going on.

The trial judge overruled the objection and permitted Wright to describe his therapy and medication. Later in the proceeding, the plaintiff's wife testified, without objection, to her husband's illness. Also without objection, an adjuster for Commercial Union was asked during cross-examination whether Commercial Union knew of Mr. Wright's cancer during the filing of his claim.

Wright contends evidence of cancer tends to explain (1) his untimely filing of a proof of loss statement, (2) incomplete statements appearing in answers to Commercial Union's interrogatories, and (3) his economic condition at the time the building was sold. The district court did not abuse its discretion in holding that the probative value of this evidence outweighed its prejudicial impact. Fed.R.Evid. 403.

Commercial Union contended that Wright failed to comply with the policy requirements that a proof of loss and inventory of damaged property be submitted. Wright's response was that he had done all he could be expected to do in light of assurances made by Commercial Union's agents. It was not reversible error for the district judge to permit Wright to show his failing health to show the reasonableness

of his conduct under the circumstances. *See* Fed.R.Evid. 403; *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1347 (5th Cir.1978).

## III. WAIVER OF CONDITIONS OF THE INSURANCE CONTRACT

The terms of the insurance policy provide: "In case of loss, the named insured shall ... submit to the Company within (60) days after requested a signed, sworn statement of loss ..." Wright's complaint alleges that he provided such a statement of loss. At trial, Commercial Union contended that neither a statement of loss nor an inventory of damaged personal property was provided as required by the policy. Wright's position at trial was that (1) Commercial Union never requested such documents[2] and (2) Commercial Union had waived the necessity of filing a statement of loss/inventory of personal property.

■ In briefs before this court, Commercial Union emphasizes that Wright relied upon a theory of waiver which was not set forth in the complaint. Here, no objection was made to the introduction of evidence regarding waiver of these policy requirements. Even had such an objection been made, the trial judge could have permitted Wright to amend the complaint so as to allege waiver by Commercial Union. Fed. R.Civ.P. 15(b). Commercial Union's claim that the verdict should be set aside because the proof at trial differed from the pleadings is therefore without merit.

■ Commercial Union also asserts that Wright has failed to present any evidence of conduct by Commercial Union which constitutes a waiver of the policy requirements. Under Georgia law, "[w]aiver ... may be accomplished by conduct on the part of the insurer 'which would reasonably lead the insured to believe that strict compliance with the limitation provision would not be insisted upon.'" *Brown v. Nationwide Ins. Co.,* 167 Ga.App. 84, 306 S.E.2d 62, 63 (1983) (quoting *General Ins. Co. v. Lee Chocolate Co.,* 97 Ga.App. 588,

589, 103 S.E.2d 632, 633 (1958)). In the present case, a factual issue existed as to whether waiver had occurred.

Wright presented evidence showing that he complied with every request made by the insurance company. He promptly notified the company of the damage to the building. Accordingly, Commercial Union was fully aware of the loss sustained. Jack Hearon, an adjuster for Commercial Union, informed the Wrights that they need not worry about whether the claim would be paid. Randall Peters, who was sent to investigate the claim for Commercial Union, made similar statements to the Wrights. In light of the plaintiff's material compliance with the policy provisions and the conduct of Commercial Union's agents, a factual question was created as to waiver. *Cf. Modestino v. Allstate Ins. Co.,* 125 Ga.App. 665, 188 S.E.2d 830 (1972) (issue of fact as to whether insurance company had waived requirement of proof of loss where adjuster stated "he would handle the matter for the plaintiff"). *Laughinghouse v. First of Georgia Ins. Co.,* 123 Ga.App. 189, 179 S.E.2d 675 (1971) ("[E]vidence as to a statement of [insurance company] official made to the plaintiff inquired as to when payment of the claim would be made, that everything was in line, and was being processed, and only a little time was necessary, was, if believed by the jury, sufficient to constitute a waiver of the filing of proof of loss....").

## IV. NEWLY DISCOVERED EVIDENCE

■ Commercial Union contends that the district court erred by failing to grant a new trial based on newly discovered evidence. During the trial testimony of one of the plaintiff's witnesses, Commercial Union discovered that two persons not listed in plaintiff's response to interrogatories had assisted in inspecting the damage to the roof. Commercial Union based its motion on this "newly discovered" evidence. Under Fed.R.Civ.P. 60(b), the district court

---

**2.** Under the insurance policy, Commercial Union was obligated to request a statement of loss. The terms of the policy, however, do not require the company to request an inventory of personal property.

may grant a new trial based upon newly discovered evidence. To prevail on such a motion, the party seeking a new trial must satisfy a five part test:

(1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

*Scutieri v. Paige,* 808 F.2d 785, 793 (11th Cir.1987). On review of the district court's ruling on such a motion, this court is restricted to the abuse of discretion standard. *Id.*

■ Had Commercial Union exercised due diligence by deposing this witness, it would have learned the names of the additional persons present during the inspection of the roof. Furthermore, Commercial Union has made no showing that the testimony of these two persons could have affected the outcome of the trial. The district court did not abuse its discretion by denying the motion for new trial.

The judgment of the district court is AFFIRMED.