Dano Lane OSTRANDER, a minor, by Ronald OSTRANDER and Mary Ostrander, his parents and natural guardians, and Ronald Ostrander and Mary Ostrander, individually, Plaintiffs,

v.

CONE MILLS, INC., Palmetto Garment Co., Howard Butler, Ms. Elaine Aspen–Wicklund, Defendants,

and

CONE MILLS CORPORATION, Third Party Plaintiff,

v.

Jodi (Jensen) ENGA and Paul Enga, Third Party Defendants,

and

Howard BUTLER and Elaine Aspen–Wicklund, Third Party Plaintiffs,

v.

BUTLER'S PROMOTIONS, INC. and Little Clothes Line, a division of The Josephine Co., Third Party Defendants.

Civ. No. 3–87–414.

United States District Court,
D. Minnesota,
Third Division.

March 9, 1988.

John Steele, Minneapolis, Minn., for plaintiffs.

Heidi Hoard, Minneapolis, Minn., for Cone Mills.

Susan Hall, Minneapolis, Minn., for Palmetto.

Julie Williams, Minneapolis, Minn., for Butler's Little Store.

Robert Schmitz, Minneapolis, Minn., for Josephine Co.

JANICE M. SYMCHYCH, United States Magistrate.

The above matter came on before the undersigned on March 3, 1988 upon defendants Cone Mills' and Palmetto's motions (in which defendants Butler's Little Store and Josephine Co. join) to compel production of fabric samples for destructive testing and for costs and fees, and upon plaintiff's motion for a protective order regarding any destructive testing that might be allowed. Plaintiff was represented by John Steele, Esq.; Cone Mills was represented by Heidi Hoard, Esq.; Palmetto was represented by Susan Hall, Esq.; Butler's Little Store was represented by Julie Williams, Esq.; and Josephine Co. was represented by Robert Schmitz, Esq. There were no appearances by other parties.

## PROCEDURAL AND FACTUAL BACKGROUND

This is a products liability action in which a toddler is alleged to have suffered serious burns due to the flammability of nightwear manufactured and sold by defendants. The nightwear was manufactured in 1978, and the accident occurred on May 28, 1979. Plaintiffs submitted the nightwear involved in the fire, along with a pair used by the toddler's twin brother, to their counsel. Two additional identical garments were purchased, one pair in size 2, the other in size 3. The fabrics and garments involved are subject to flammability standards under federal law, and were treated with flame retardants. Because the flame retardants are susceptible to laundering, the garments are sold with special laundering instructions. In essence, plaintiff claims that the fabric and garment, at the time they left the manufacturers' hands, were so defective that they failed the federal flammability standard. Defendants focus their defense, for purposes of this phase of the pretrial proceedings, on the laundering that intervened between the sale of the garment and the fire. They assert that not only the nightwear involved

in the fire, but the similar nightwear tested by plaintiff's expert, may have failed the flammability tests due to improper laundering.

Plaintiff's expert, Dr. Robert Johnson of the University of Minnesota, subjected the accident nightwear, the brother's nightwear, and the purchased identical nightwear to destructive flammability testing in his laboratory in 1985 and 1986. Only a small portion of each of the size 2 and size 3 purchased new garments was left unwashed. Some of the unwashed material was tested by Dr. Johnson, and only a small strip of unwashed fabric remains from each of the size 2 and size 3 garments. It is the only remaining or available unwashed evidence. The tests were conducted without prior notice to defendants, or without any input from them as to the testing methodology or pre-testing handling of the garments. The tests were videotaped in full, and the tested swatches, as well as the untested remnants have been preserved as evidence. By virtue of prior orders in this matter, dated September 11, 1987, and October 6, 1987, plaintiffs were compelled to set forth what amounts of each of the garments remained after plaintiffs' destructive testing. Plaintiffs did so by affidavits of Dr. Johnson and counsel dated September 22, 1987, and September 25, 1987. Defendants have since viewed, photographed, and catalogued the remaining inventory of fabric pieces. They seek production of a portion of the remaining pieces to conduct destructive testing.

Defendants have specifically described in a letter dated December 23, 1987, which is incorporated in their moving papers, what amount of each of the garments it claims necessary for its tests. In essence, it seeks 3.5 inch x 10 inch pieces from each garment in order to conduct its own tests under the federal flammability testing protocol. That protocol, by regulation, requires test swatches of those specific dimensions. They also ask for one of the two unburned sides of each strip previously tested by plaintiff's expert. Defendants wish to test those strips using a handful of chemical tests, in order to ascertain the presence of certain chemical deposits which may collect

during laundering. Both plaintiffs and plaintiffs' expert performed laundering of various items. Defendants urge that such chemical tests may lead to explanations for plaintiffs' test results. They urge that the case cannot be properly defended absent such tests.

Plaintiffs oppose the request on a variety of grounds, and argue that if their position is rejected, at least a series of safeguards must be imposed by way of protective order, pursuant to FRCP 26(c).

Defendants' motion to compel production for the purpose of chemical testing will be granted, in part, and plaintiffs' motion for a protective order will likewise be granted in part.

## DISCUSSION

Rule 34 of the Federal Rules of Civil Procedure governs the pretrial production of evidence for testing and inspection by one's adversary. Production for purposes of destructive testing falls within that rule as well. *See, Dabney v. Montgomery Ward & Co.,* 761 F.2d 494, at 498 (8th Cir.), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985), and *Cameron v. District Court,* 193 Colo. 286, 565 P.2d 925 at 929–30 (1977). When production is resisted, Rule 26(c) provides the standard for denial or limitation of the request; the decision whether to allow destructive tests rests within the sound discretion of the court. *Dabney,* at 498; *Cameron,* 565 P.2d at 929.

▆ The court is required to balance the interests to be served by destructive testing against the value of preservation of the evidence on behalf of the opposing party. In instances where the entire piece of evidence will be consumed by testing, the balance may dictate the denial of a request for such testing. Here, with the exception of the two 3.5 inch x 10 inch swatches of unwashed fabric, no evidence will be entirely consumed. After defendants' proposed testing, samples of each garment, and of each of plaintiffs' test strips, will be available as evidence. This is in addition to the photographic evidence which is available for each of the fabrics and garments.

Therefore, plaintiffs' opposition to the proposed testing on the grounds that they wish to preserve all the remaining fabric for evidence at trial is rejected. Plaintiffs' counsel can articulate no more than a general desire to have the evidence available because "you can never tell what a jury may do." This is clearly insufficient to outweigh defendants' interest in procuring expert and scientific evidence for their defense, especially when fabric will remain for use as evidence after defendants' tests. *See, Pizza Hut v. Midwest Mechanical,* 1988 U.S. Dist. LEXIS 890 (N.D.Ill. February 1, 1988) [available on WESTLAW, 1988 WL 8980], and *Kingsport, Tennessee v. SCM Corporation,* 352 F.Supp. 287 (E.D. Tenn., N.E.D.1972). As to the two remaining unwashed swatches, the same result is called for, despite the fact that no unwashed pieces will then be available as evidence. Plaintiffs have had an opportunity to test the unwashed garments for flammability. They now have expert testimony and test results as trial evidence. The flammability of the unwashed fabric is a critical issue in this case, and any failure of the federal test standard tends to defeat the defense of improper laundering. Because this issue is so pivotal, defendants should be granted the same opportunity to conduct the test that plaintiffs have had. Both parties' testing will be preserved by way of videotape as evidence, and a fair opportunity will thereby be available for challenging the test procedures and results. If anything, plaintiffs will nonetheless have an advantage, because they will be given the opportunity to attend and observe defendants' testing through counsel and plaintiffs' expert. Under these circumstances, the motion for production of the only remaining unwashed samples for destructive testing should be granted. *See, Pizza Hut,* at 4.

▆ Plaintiffs' argument, supported by affidavit, that the proposed chemical tests are not scientifically valid and therefore irrelevant, is rejected. Plaintiffs' expert asserts that view, but defendants' experts have told defense counsel that such tests are a viable method for addressing

the issue of improper laundering. When experts disagree on the relevancy of certain evidence, it would be unjust to select the view of one of those experts with the result that another party's discovery is thereby barred. It is premature during the discovery stage to make what is essentially an evidentiary ruling. *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D.N.Y. 1984); *Financial Bldg. Consultants v. American Druggists Ins. Co.,* 91 F.R.D. 59, 61 (N.D.Ga.1981); and *Quaker Chair Corp. v. Litton Business Systems, Inc.,* 71 F.R.D. 527, 531 (S.D.N.Y.1976). Once the testing is completed, plaintiffs will be free to make an appropriate motion in limine or evidentiary objection. Even so, it is more likely that the evidence will be received, with its viability being a matter of credibility for the jury to determine. One expert's testimony that another experts' view is spurious is generally an inadequate basis for exclusion of expert testimony. *E.g., Wright v. Commercial Union Ins. Co.,* 818 F.2d 832, 836 (11th Cir.1987); *Lust v. Clark Equipment Co., Inc.,* 792 F.2d 436, 439 (4th Cir.1986); *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1535 (D.C. Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), and *Alexander v. National Farmers' Organization,* 614 F.Supp. 745, 792 (D.C.Mo.1985). Therefore, plaintiffs' argument, so vigorously made at this discovery hearing, that there has already been a professional determination that the fabric fails flammability standards such that no further testing is warranted, is squarely rejected.

In cases where expert testimony will constitute a significant portion of the proof, discovery of expert opinion beyond that set forth in FRCP 26(b)(4) may be allowed. *Dennis v. BASF Wyandotte Corp.,* 101 F.R.D. 301, 303 (E.D.Pa.1983), and *Quadrini v. Sikorsky Aircraft Division, United Aircraft Corp.,* 74 F.R.D. 594, 595 (D.Conn.1977). In keeping with that, there has already been a ruling that plaintiffs' expert may be deposed, with the reasonable costs to be paid by defendants. Likewise, defendants' experts may be deposed by plaintiffs' counsel, under the same conditions. However, the combined presence of important scientific proof with the destruction of evidence by scientific testing, cause the court to concur with plaintiffs that careful protections, under the authority of FRCP 26(c) are warranted. Those limitations are set forth below.

Therefore, based upon the foregoing, the briefs and arguments of counsel, and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. Defendants' motion to compel production of fabric swatches for the purpose of destructive testing, as outlined in their December 23, 1987 letter, except that ¾″ × 5″ sections of remaining char strips shall be produced rather than 10″ sections, is GRANTED;

2. Plaintiffs' motion for a protective order defining the circumstances and conditions of the destructive testing is, as set forth below, GRANTED;

3. All destructive testing shall occur at locations to be determined by defendants, and at times mutually convenient to counsel and experts of all parties, except that testing shall occur between Monday and Friday during normal business hours;

4. All destructive testing which is the subject of this motion shall be concluded no later than May 1, 1988;

5. Plaintiffs' counsel and plaintiffs' expert may be present for all destructive testing which is the subject of this order, and may videotape or photograph as they deem appropriate, unless defendants, upon a showing of good cause, obtain a court order finding that such videotaping or photography will unfairly compromise the viability of the proposed testing;

6. Defendants need not submit any testing protocol or outline to plaintiffs in advance of, or during the proposed testing, and bear no obligation to explain procedures during the course of the proposed testing;

7. Plaintiffs' counsel and expert shall not interfere in any way during the course of the proposed testing, including the solicitation of explanations;

8. Defendants shall fully videotape each test from its inception to its conclusion, including all handling of the fabric preliminary to each test, with photographic identification of any substance added to or placed upon the fabric;

9. Plaintiffs shall deliver the fabric covered by this order to defendants three days prior to the dates for testing, and shall be assessed a financial sanction, in an amount to be determined at a hearing, for each day on which the fabric remains undelivered;

10. Plaintiffs, after the conclusion of the proposed testing, are granted leave to depose defendants' expert witnesses and any other persons substantially involved in the performance of the proposed testing;

11. Defendants' motion for costs and fees incurred in connection with this motion is DENIED.