[No. 5296.]
[No. 2933 C. A.]

THE COLORADO MIDLAND RAILWAY COMPANY
v. McGARRY.

1. **Practice in Civil Actions—Rights of Litigants—Appellate Practice—Prejudicial Error.**

A party has a right to have his cause submitted to a jury upon proper instructions, and to have the trial court observe the rules of evidence, whether the facts are in slight or serious dispute, although error might not be as prejudicial where the conflict in evidence is only slight as where there is a substantial conflict.—P. 401.

2. **Railroads—Damages—Injuries to Passenger—Instructions—. Evidence to Warrant.**

In an action for injuries to a passenger by the derailment of a train, there was evidence that the train was going from 35 to 40 miles an hour at the time of the accident, and that the cross-ties were rotten at the place of the accident, although such testimony was contradicted by the defendant. Held, that an instruction to return a verdict for plaintiff if the jury found that the train was derailed because of the unsound condition of the ties or the defective condition of the rails constituting the track at said point, or the unusual and dangerous rate of speed at which the train was then running, or either of said causes, or all of said causes combined, was proper.—P. 401.

3.  Evidence—Res Gestae.

In an action for injuries to a passenger by the derailment of a train, a statement by the engineer of the train, made six months after the accident, that there was a defective rail where the accident occurred, which, from all appearances, looked like an old break, is not admissible as res gestae.—P. 402.

4.  Evidence—Admissibility—Witnesses — Impeachment —Credibility.

In an action for injuries to a passenger by the derailment of a train, the engineer of the train testified that the condition of the track at the place of the accident was good for a speed of 50 miles an hour, and that he had every reason to believe that the track was in perfect condition. Held, that a statement made by him six months after the accident, to the effect that there was a defective rail where the accident occurred, which, from all appearances, looked like an old break, was admissible as affecting his credibility.—P. 403.

5.  Evidence—Demonstrative Evidence—Relevancy.

In an action for injuries to a passenger by the derailment of a train, rotten pieces of wood, purporting to be parts of the ties at the place of the accident, are admissible when identified as such; but testimony of the conductor of the train in rebuttal that shortly after the derailment he had seen several persons with pieces of wood in their hands which were not parts of the cross-ties under the rails where the accident occurred, and that he so stated to them, is inadmissible, where none of the persons to whom the conductor referred are witnesses at the trial.—P. 403.

6.  Witnesses—Confidential Relations—Physicians.

Section 4824, cl. 4, Mills' Ann. Stats., provides that a physician or surgeon shall not, without the patient's consent, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient. Held, that a physician commissioned by a railroad company's chief surgeon to inquire into the injuries of a passenger, received on one of the railroad company's trains, and to prescribe treatment for him, was not competent to testify, in an action for injuries received by the passenger, as to information acquired by him while so attending the person injured.—P. 404.

7.  Railroads—Damages—Injuries to Passengers—Instructions.

In an action for injuries to a passenger by the derailment of a train, a requested instruction that, if defendant's trains were continuously operated over a broken rail for a long time with uniformly good results without any visible means of detecting the flaws described in the rail, such facts would be evidence of

its freedom from danger as strong as defendant could have tending to rebut the presumption of negligence from continuing its use, was properly refused, since, aside from the objection that it seems to say that the presumption is one of law and not one of fact for the jury, if such were the law, the duty of inspection to see that the rails were in proper condition might be dispensed with so long as the rails and cross-ties could be used without accident.—P. 406.

*Appeal from the District Court of Teller County. Hon. Louis W. Cunningham, Judge.*

Action by L. E. McGarry against The Colorado Midland Railway Company. From a judgment for plaintiff, defendant appeals.          *Affirmed.*

Messrs. ROGERS, CUTHBERT & ELLIS, and Mr. LEWIS B. JOHNSON (Mr. PIERPONT FULLER, of counsel), for appellant.

Mr. JOHN M. GLOVER (Mr. H. McGARRY, of counsel), for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff McGarry, a passenger riding on one of the trains of The Colorado Midland Railway Company, brought this action, and obtained a judgment against defendant for $2,000, for damages for personal injuries sustained by him as the result of defendant's negligence. Defendant appeals.

As charged in the complaint, the negligence was the running of defendant's train at the time of the injury at an unusual and dangerous rate of speed on a down grade and over a defective and unsafe track, the rails being defective and the cross-ties decayed and rotten. The clear and concise presentation by counsel for both parties of the questions submitted for decision has materially aided the court and lightened its labors.

The parties are in accord that where, as here, the relation of carrier and passenger exists, and a railway car is thrown from the track whereby the passenger is injured, the presumption is that the carrier is guilty of negligence, and the onus is then placed upon it to show that it was not negligent in the respect charged.   Learned counsel for defendant, while protesting that the preponderance of evidence upon the issues of fact is with defendant, nevertheless concede that the evidence is in substantial conflict, and, therefore, they do not rely for reversal upon the ground that the judgment is contrary to the evidence.   They insist, however, that this substantial conflict in the evidence requires us to give careful attention to the alleged errors of the trial court in admitting and rejecting evidence, and in giving and refusing instructions, which errors might, and probably did, to the prejudice of defendant, contribute to the verdict.

It goes without saying that a party has a right to have his cause submitted to the jury upon proper legal instructions, and to the observance by the trial court of wholesome rules of evidence, whether the facts are in slight or serious dispute; though it may be true, as counsel apparently contend, that error in instructions and rulings on evidence would be prejudicial in a greater degree where the evidence is in substantial conflict than where the differences are only slight.

1. One of the instructions given permitted the jury to return a verdict for plaintiff if they should find that the train was derailed ''because of the rotton and unsound condition of the ties, or the defective condition of the rails constituting the track at said point, or the unusual and dangerous rate of speed at which the said train was then running, or either of such causes, or all of said causes combined.''   De-

fendant says this instruction was wrong because there was no evidence tending to show that the train was being so operated, or that the condition of the ties was, or could have been, the proximate cause of derailment, or in any manner contributed to the accident.

In this, counsel are in error. There was some evidence that the train was going thirty-five to forty miles an hour at the time of the accident, which, in the circumstances, the jury might properly find was excessive; and there was also evidence that the cross-ties were rotten .and decayed at the place where the derailment occurred. True it is, there was testimony to the contrary as to both of these issues, and that the derailment occurred solely because of a latent defect in a broken rail, which could not be discovered by any test known to science; hence the accident was unavoidable, and not the result of an old fracture of the rail, or of the condition of the cross-ties or the excessive speed, if any. Still, the instruction given was applicable to some of the testimony which was introduced, and it was for the jury to determine, in view of the surrounding circumstances and conditions, whether the rate of speed was dangerous, and whether such speed and condition of the ties, as matter of fact, caused, or contributed to, the derailment.

2. In cross-examination of defendant's witness, the locomotive engineer in charge of the engine at the time of the accident, plaintiff's counsel was permitted, over the objection of defendant, to ask if he had not, about six months after the accident, in a conversation with John Calderwood, said that there was a defective rail where the accident occurred which, from all appearances, looked like an old break; and that it was also error for the court thereafter to permit counsel for plaintiff, after the engineer denied

the statement, to show by Calderwood that he did say so.

Defendant says, as one ground of objection, that it was not proper as part of the *res gestae* thus to bind the company by the declaration of its agent or employee, since the remark was said to have been made six months or more after the accident. Defendant is right as to this ground, but this testimony was not sought to be introduced, nor was it permitted, as a part of the *res gestae*. The engineer had theretofore testified that the condition of the track at the place in question was good for a run at the rate of fifty miles an hour, and that he had every reason to believe that the track there was in perfect condition, and said expressly that it was in first-class condition in every respect, so far as his knowledge of it was concerned, and from the motion of the engine as he passed over it. Certainly, this was material testimony tending to show that the track, including the rails and cross-ties, was in perfect condition. The testimony of Calderwood that the engineer had made inconsistent statements was properly admitted as affecting the credibility of the latter. The cross-examination of defendant's engineer, which made Calderwood's testimony admissible, was not in respect to an immaterial or irrelevant matter, but bore directly upon his examination in chief.

3. Witnesses for plaintiff produced in court, and over defendant's objection the court admitted, rotten pieces of wood which purported to be parts of ties, forming a part of the track at the place where the accident happened, and defendant says that such evidence was improperly received because the pieces were not identified as having been parts of the cross-ties under the rail which was broken, or as having been a part of the track in question. Error is also predicated on the refusal of the court to permit a

witness for defendant (the conductor of the train) to testify that he saw, shortly after the derailment, several persons, but not the witnesses who testified at the trial, with pieces of wood in their hands which were not parts of the cross-ties, and that the conductor so stated to them.

There was no error in either of these rulings. The evidence tended to establish the fact that the pieces of wood produced before the jury were parts of the cross-ties under the broken rail, and it was not error to reject the offered testimony of the conductor that other witnesses than those who were sworn by plaintiff may have had in their possession pieces of wood that did not come from these cross-ties.

*St. Louis & S. F. R. R. Co. v. Murray,* 55 Ark. 248, is not in point. There the court said that it was proper that evidence as to remarks and exclamations made by other passengers as to the situation when plaintiff jumped from the train and received injuries was competent and admissible as part of the *res gestae* to show the apparent situation and the effect which it probably had upon him and other passengers. That decision is far from supporting defendant's contention here. Just how the testimony of the conductor that other witnesses had pieces of wood that were part of the embankment affected the credibility of plaintiff's witnesses who testified that the pieces they produced in court came from defective cross-ties under the broken rail, is not obvious.

4. Defendant called as a witness Dr. Packard, a physician authorized to practice his profession under the laws of this state, and asked him concerning plaintiff's condition at the time the physician made an examination of him soon after the injury was inflicted. It appears that this examination was made as the result of instructions to Dr. Packard from Dr.

Bancroft, defendant's chief surgeon. Plaintiff, refusing his consent, objected to this testimony upon the ground that it was forbidden by section 5284, Mills' Ann. Stats., which reads:

"A physician or surgeon duly authorized to practice his profession under the laws of this state, shall not, without the consent of his patient, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

Defendant claims the evidence was competent because Dr. Packard was not employed by plaintiff as a physician, and that plaintiff at the time was not his patient. Counsel cite to this point *Heath v. Broadway & S. A. R. Co.*, 8 N. Y. Supp. 863, and 23 Am. & Eng. Enc. Law (2nd ed.) 85.

Defendant's objection to this ruling of the court excluding the offer is not tenable, and the authorities cited are not in point. Dr. Packard himself testified that he was commissioned by Dr. Bancroft to inquire into plaintiff's injuries and to prescribe treatment where the family physician was not employed. What the physician found, as to plaintiff's physical condition, must have been the result of the examination that was made in such circumstances. Our statute applies and makes the testimony incompetent. The authorities cited hold that where a person responsible for an accident by which another is injured sends a physician employed and paid by him to attend the injured person, the rule of privilege applies. In the Heath case the court adverted to the fact that the evidence there showed the object and purpose of the physician in examining the patient were to procure for the employer (the defendant company) information about plaintiff's injury and to elicit from her admissions as to the circumstances of the accident, and place the information thus procured at the dis-

posal of the defendant company by whom he was employed. That is quite a different case from the one in hand. Here Dr. Packard was employed and paid by defendant company to attend plaintiff in a professional capacity and prescribe for him, and under the authorities cited, as well as the provisions of the statute, he was not permitted to give information, which he thus acquired, as to plaintiff's physical condition without the consent of the patient.

5. Complaint is made of the refusal of the court to give instruction No. 14 tendered by defendant. There was no error in this refusal. A part of this instruction was to the effect that if defendant's trains were continuously operated over a broken rail for a long time with uniformly good results and without any visible means of detecting the flaws described in the rail, such facts would be evidence of its freedom from danger as strong as defendant could have tending to rebut the presumption of negligence from continuing its use. Authority for this instruction is supposed to be *Pueblo Building Co. v. Klein*, 5 Colo. App. 348. The observation in the opinion in that case, which defendant says justifies this instruction, was made with respect to a case where the proper construction or safe condition of machinery was involved, and the court did say that evidence that such machinery had always satisfactorily answered the purpose for which it was intended is competent as raising a strong presumption that it was properly constructed and could be used with safety. Aside from the objection to the instruction as tendered that it seems to say that the presumption is one of law, and not one which the jury might indulge as of fact, it would be a strained construction and extension of the doctrine said to be announced in the Klein case to apply it to a case where the condition of the ties and rails of a railroad track were in issue; for if the

instruction tendered is good law, under the facts of this case, then so long as the rails and cross-ties of a railroad track can be used without an accident, the duty of inspection to see that they are in a proper condition might be dispensed with.

No prejudicial errors were committed in the trial of this case, and the judgment must be affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.