**Stephan D. CLARK, Petitioner,**

v.

**DISTRICT COURT, SECOND JUDICIAL DISTRICT, CITY AND COUNTY OF DENVER; Daniel B. Sparr, one of the judges thereof; Estates of Sailas, Respondents.**

**No. 83SA182.**

Supreme Court of Colorado,
En Banc.

Aug. 29, 1983.

**4**

**6**

Fortune & Lawritson, P.C., Lowell Fortune, Denver, for petitioner.

Feder, Morris & Tamblyn, P.C., Leonard M. Goldstein, Denver, for respondents.

QUINN, Justice.

In this original proceeding the petitioner, Stephan D. Clark, who is one of two defendants in a pending wrongful death action, seeks to prohibit the Denver District Court (respondent court) from enforcing an order authorizing the disclosure of psychiatric and psychological records pertaining to Clark's previous treatment for mental problems and associated alcohol and drug abuse. We issued a rule to show cause and now make the rule absolute.

**I.**

Stella M. Sailas, as conservator for the estates of the three minor children of the decedent, Jerry Joseph Sailas, commenced a wrongful death action against 5130 West Alameda, Inc., doing business as the White Horse Bar (corporation), and Stephan D. Clark, its employee, who was acting as manager of the bar, for the fatal shooting of Sailas on September 5, 1981. The complaint, which includes claims of negligence and assault and battery, states in pertinent part that the corporation, notwithstanding its knowledge of Clark's long history of mental illness including alcohol and drug abuse and Clark's lack of training in peace-keeping functions, employed him to maintain order at the bar and permitted him to keep a .357 Magnum pistol within ready access on the premises for that purpose, and that at 2:00 a.m. on September 5, 1981, Clark, after being informed of a disturbance, confronted Sailas in the parking lot of the bar and fired three shots into him, thereby causing his death. In his answer Clark denied any liability for the death and asserted several affirmative defenses, none of which, however, raised his past physical or mental condition as a defense to the claims.[1]

In the course of pretrial discovery, Clark's deposition was taken by the conservator. Clark admitted to having received psychiatric treatment for a mental problem in 1973 and psychological counseling for alcohol and drug abuse on at least four separate occasions between 1974 and 1979. The conservator requested Clark to execute a document authorizing the release of his treatment records, and Clark refused. The conservator then filed a motion to compel discovery under C.R.C.P. 37,[2] arguing that Clark's treatment records were properly discoverable because his mental condition prior to and during the shooting was a relevant issue in the case. Clark, in opposing the motion, claimed that the information requested by the conservator was protected by the Colorado physician-patient and psychologist-client privileges.[3] The re-

---

1. Clark's affirmative defenses include, *inter alia,* self-defense, defense of property, and contributory negligence.

2. C.R.C.P. 37(a)(1) permits a party to apply for an order compelling discovery when a party fails to permit the inspection and copying of documents requested for production under C.R. C.P. 34(a).

3. Clark also invoked the social worker privilege created by section 12–63.5–115, C.R.S.1973

(1978 Repl.Vol. 5). This statute creates a privilege for communications made by a client to a social worker or for the advice given by the social worker in the course of professional employment. However, it was on the basis of Clark's admission to having received psychiatric and psychological treatment and counseling for his past mental problems that the conservator requested him to execute a release for all records pertaining to these treatments. Since there is nothing in the record raising an issue as to the applicability of the social worker

spondent court held a hearing on the conservator's motion to compel and entered a general minute order granting the motion.

After we issued a rule to show cause, the respondent court filed an answer raising two arguments in support of its discovery order. The respondent court contends that the statutory privileges in question are qualified rather than unqualified and, thus, it could properly order the disclosure of privileged information upon a showing of good cause. It also argues that, even if the statutory privileges are not so qualified, Clark nevertheless waived any privilege by virtue of his answer which, the respondent court asserts, placed his physical and mental condition in issue. We conclude that the information sought by the conservator is protected from discovery by the physician-patient and psychologist-client privileges and that, therefore, the respondent court exceeded its jurisdiction in granting the conservator's motion to compel the discovery of such information.

## II.

We recognize at the outset the general rule that orders pertaining to pretrial discovery are interlocutory in nature and are not ordinarily reviewable in an original proceeding. Because, however, the exercise of original jurisdiction is discretionary and governed by the particular circumstances of the case, we have made exceptions to this general rule when, for example, a pretrial discovery order significantly departs from the controlling standards of discovery, e.g., *Hawkins v. District Court,* 638 P.2d 1372 (Colo.1982); *Lucas v. District Court,* 140 Colo. 510, 345 P.2d 1064 (1959), or when a pretrial discovery order will cause a party unwarranted damage that cannot be cured on appeal, e.g., *Tyler v. District Court,* 193 Colo. 31, 561 P.2d 1260 (1977). If Clark's treatment records are indeed protected from disclosure by statutory privileges, then the damage to him will occur upon their disclosure regardless of the ultimate outcome of any appeal from a final judgment. We therefore consider it appropriate to address the validity of the respondent's discovery order in this original proceeding.

## III.

Section 13–90–107(1), C.R.S.1973, expressly recognizing that "[t]here are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate," creates a privilege for information imparted to a physician by a patient or to a certified psychologist by a client during the course of a professional relationship. A review of basic principles of law pertaining to these privileges will serve as a backdrop to our resolution of the precise issues before us.

## A.

Subsection 13–90–107(1)(d), C.R.S.1973 (1982 Supp.), which creates the physician-patient privilege, states that "[a] physician, or surgeon . . . duly authorized to practice his profession . . . shall not be examined

---

privilege, we do not address the issue in this opinion.

Clark also asserted that his treatment records were protected from disclosure by the federal alcohol and drug abuse treatment privileges. 42 U.S.C. § 4582 (1976) (now part of the Public Health Service Act, 42 U.S.C. § 290dd–3; *see* Alcohol and Drug Abuse Amendments of 1983, Pub.L. No. 98–24, § 2(b)(13), 97 Stat. 175, 181 (1983)) creates a privilege for treatment records "which are maintained in connection with the performance of any program or activity relating to alcoholism or alcohol abuse education, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States . . . ." A similar privilege is created for drug abuse treatment records by 21 U.S.C. § 1175 (1976 & Supp. V 1981). Both privileges are qualified in the sense that a court, upon an application showing good cause, may order disclosure of the records. Because we resolve the discovery issue on the basis of the Colorado physician-patient and psychologist-client privileges, we do not address these federal privileges. We note in passing that even if the federal privileges are applicable to Clark's treatment records, the brief minute order of the court granting the conservator's motion to compel contains no findings which might support the good cause contemplated by the federal statutes.

without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient . . . ." The statute creating this privilege expressly provides that it shall not apply to the following situations: a malpractice action against a physician on a cause of action arising out of or connected with the physician's care or treatment of the patient; communications made to a physician who was in consultation with the physician being sued for malpractice; and a review of a physician's services by various designated review bodies and governmental agencies.[4] The source of the psychologist-client privilege is subsection 13–90–107(1)(g), C.R.S. 1973, which states that "[a] certified psychologist shall not be examined without the consent of his client as to any communication made by the client to him, or his advice given thereon in the course of professional employment . . . ."

The purpose of the physician-patient privilege is to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the physician's disclosure of information imparted to him by the patient during the course of a consultation for purposes of medical treatment. See, e.g., People v. Taylor, 618 P.2d 1127 (Colo.1980); Community Hospital Association v. District Court, 194 Colo. 98, 570 P.2d 243 (1977); Colorado Midland Ry. Co. v. McGarry, 41 Colo. 398, 92 P. 915 (1907); Colorado Fuel and Iron Co. v. Cummings, 8 Colo.App. 541, 46 P. 875 (1896). The purpose of the psychologist-client privilege, as is obvious from the plain meaning of its statutory terms, is identical to that of the physician-patient privilege. These privileges, once they attach, prohibit not only testimonial disclosures in court but also pretrial discovery of information within the scope of the privilege. C.R.C.P. 26(b)(1) in this respect authorizes discovery of information relevant to the subject matter in the pending action as long as it is "not privileged."

The burden of establishing the applicability of the privilege rests with the claimant of the privilege. See, e.g., Gerick v. Brock, 120 Colo. 394, 210 P.2d 214 (1949); Hanlon v. Woodhouse, 113 Colo. 504, 160 P.2d 998 (1945). As in the case of other privileges, the physician-patient and the psychologist-client privileges may be waived. A waiver, which is really a form of "consent" to disclosure, may be express or implied, Stauffer v. Karabin, 30 Colo. App. 357, 492 P.2d 862 (1971), and the burden of establishing a waiver is on the party seeking to overcome the claim of privilege, see Nelson v. Grissom, 152 Colo. 502, 382 P.2d 991 (1963). A waiver must be supported by evidence showing that the privilege holder, by words or conduct, has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question.[5] Cf. Mauro v. Tracy, 152 Colo. 106, 380 P.2d 570 (1963) (plaintiff's trial testimony concerning the nature, extent and cost of medical treatment received by him as a result of an automobile accident constituted a waiver of the physician-patient privilege as to those matters to which the plaintiff testified); Kelley v. Holmes, 28 Colo.App. 79, 470 P.2d 590 (1970) (personal injury plaintiff who elicited trial testimony from two doctors as to the seriousness of his injuries waived the physician-patient privilege as to all physicians consulted by the plaintiff concerning those injuries).

---

4. Subsection 13–90–107(1)(d) was amended effective May 25, 1983 by Senate Bill No. 45 to include within the statutory privilege communications made to a registered professional nurse. The amendment also limits the privileged character of such communications in the same manner as communications to a physician or surgeon.

5. Clark's deposition testimony admitting the general nature of his prior treatments was in response to questions by opposing counsel and does not indicate an intent on his part to forego any claim of confidentiality attaching to the treatment records, and the conservator makes no such argument in this proceeding. Indeed, Clark's subsequent refusal to execute a release belies any claim of waiver, express or implied, from his deposition testimony.

## B.

The respondent court argues that the physician-patient and the psychologist-client privileges created by section 13–90–107 should be construed as qualified privileges only, thereby permitting a trial court to resolve a claim of privilege by balancing, on the one hand, a party's need to obtain information essential to a claim or defense and, on the other, the privilege holder's interest in preserving the confidentiality of the information requested. We reject the proposed construction urged by the respondent court.

 "Legislative intent is the touchstone of statutory interpretation. When the meaning of a statute is plain and unambiguous, a court cannot substitute its opinion as to how the law should read in place of the law already enacted." *Dawson v. Public Employees Retirement Association,* 664 P.2d 702, 707 (Colo.1983). The legislature in enacting the physician-patient and psychologist-client privileges clearly delineated the type of information to which the privileges apply and, with equal clarity, designated those situations to which a particular privilege does not apply. When the legislature intended to qualify a privilege by permitting a court to balance interests in determining its applicability, it made its intent known in unmistakable terms. Subsection 13–90–107(1)(e), for example, which creates a privilege for communications made to a public officer "in official confidence," conditions the privilege upon the court's determination that "the public interest ... would suffer by the disclosure." *See* Comment, *Privileged Communications*

*in Colorado,* 37 U.Colo.L.Rev. 388, 399 (1965); *see also Lindsey v. People,* 66 Colo. 343, 181 P. 531 (1919). There being no statutory language conditioning the applicability of the physician-patient and psychologist-client privileges on a judicial balancing of interests, we decline to engraft one onto the statute. Once these privileges attach, therefore, the only basis for authorizing a disclosure of the confidential information is an express or implied waiver.[6] This principle accords with the long-standing judicial interpretation of the physician-patient privilege, *e.g., People v. Taylor, supra; Gerick v. Brock, supra; Colorado Midland Ry. Co. v. McGarry, supra; Stauffer v. Karabin, supra; Colorado Fuel and Iron Co. v. Cummings, supra,* and considering its purpose, this same principle should apply to the psychologist-client privilege.

 During his deposition Clark admitted, in response to questions from the conservator's attorney, that he had received mental treatment by a psychiatrist and a psychologist during various periods prior to the incident of September 5, 1981. It is quite obvious that Clark's deposition testimony was sufficient to establish the privileged character of the records pertaining to his prior treatment. It was therefore incumbent upon the conservator to overcome Clark's prima facie showing of privilege by demonstrating that he either expressly or impliedly waived the privilege. It is the waiver issue which we now consider.

## C.

The respondent court argues that Clark, by virtue of his denial of the liability alle-

---

**6.** While admittedly our construction of the Colorado privilege statutes prohibits a party from controverting the claim or defense of the opposing party by discovery of privileged information, there is nothing in our construction to preclude the litigant from controverting his opponent's claim or defense by evidence, both direct and circumstantial, which falls outside the scope of the privilege. C.R.C.P. 35(a), for example, authorizes the court upon a showing of good cause to order a party to submit to a physical or mental examination when the physical or mental condition of the party "is in controversy." *See, e.g., Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152

(1964); *Tyler v. District Court,* 193 Colo. 31, 561 P.2d 1260 (1977); *Braxton v. Luff,* 38 Colo. App. 451, 558 P.2d 444 (1976). If the party examined thereafter requests and obtains a report of the examination, he thereby waives the privilege "regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition." C.R.C.P. 35(b)(2). We are not dealing here, however, with a claimed waiver under C.R.C.P. 35, but rather with issues relating to the scope of the privileges and, as discussed in part IIIC, the significance of a responsive pleading to the question of waiver.

gations of the complaint, placed his physical and mental condition in issue and thereby waived the privilege. We find no waiver on the basis of Clark's responsive pleading to the complaint.

We recognize that the law is by no means settled in this area. Some states have enacted statutes which expressly provide for a waiver upon the privilege holder's placing his physical or mental condition in issue, e.g., *San Francisco v. Superior Court of San Francisco*, 37 Cal.2d 227, 231 P.2d 26 (1951); *Portsmouth v. Cilumbrello*, 204 Va. 11, 129 S.E.2d 31 (1963), while others have reached the same result by finding an implied waiver in this situation. *E.g., Mathis v. Hilderbrand*, 416 P.2d 8 (Alaska 1966); *McNutt v. Keet*, 432 S.W.2d 597 (Mo.1968). Still other jurisdictions have held that the filing of a pleading, by itself, does not constitute a waiver of privileges as to a physical or mental condition described in the pleading. *E.g., Hardy v. Riser*, 309 F.Supp. 1234 (N.D. Miss.1970) (applying Mississippi law); *Nesse v. Nesse*, 1 N.C.App. 426, 161 S.E.2d 841 (1968).

In Colorado, once the physician-patient and psychologist-client privileges come into being, subsections 13–90–107(1)(d) and (g) make clear that privileged information cannot be disclosed "without the consent" of the patient and client. "Consent," as previously discussed, requires proof of waiver—that is, an evidentiary showing that the privilege holder expressly or impliedly has given up any claim of confidentiality as to communications made by him to a physician or psychologist. *See* Part IIIA, *supra*. Given the clear terms of these statutory privileges, it would be inappropriate for us to read into the statutory scheme an implied waiver based on nothing more than the privilege holder's act of filing a pleading in a case in which his physical or mental condition may be an issue. In our view, the appropriate inquiry under such circumstances should be whether the privilege holder has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense.

When the privilege holder pleads a physical or mental condition as the basis of a claim or as an affirmative defense, the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality respecting that same condition. The privilege holder under these circumstances has utilized his physical or mental condition as the predicate for some form of judicial relief, and his legal position as to that condition is irreconcilable with a claim of confidentiality:

> "As a practical matter, a plaintiff or a defendant, who affirmatively asserts a mental or physical condition, must eventually waive the privilege to prove his case or his defense. To uphold the privilege would allow a party to use it as a sword rather than a shield. A party should not be permitted to assert a mental or physical condition in seeking damages or in seeking to absolve himself from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition." *Koump v. Smith*, 25 N.Y.2d 287, 294, 250 N.E.2d 857, 861, 303 N.Y.S.2d 858, 864 (1969).

No such inconsistency is present, however, when the privilege holder objects to the disclosure of privileged information about a physical or mental condition, but refrains from asserting the condition as the basis of a claim or an affirmative defense. *Id.*

In this case Clark, the privilege holder, did not place his physical or mental condition in issue. Rather, it was the conservator, as plaintiff, who placed Clark's physical or mental condition in issue by alleging his prior mental problems, including alcohol and drug abuse, as the basis of her claims for relief against him and the corporation. Clark in his answer denied these liability allegations and did not assert his physical or mental condition as an affirmative defense to the conservator's claim. Under these circumstances we do not believe Clark's answer can fairly be construed as a manifestation of his intent to forego the confidentiality attaching to his communications to a treating psychiatrist

or psychologist, nor do we view his answer as inconsistent with a claim of privilege with respect to these communications. The respondent court, therefore, acted in excess of its jurisdiction in granting the conservator's motion to compel discovery of Clark's treatment records.[7]

The rule to show cause is made absolute.

**7.** Nothing in our opinion precludes a trial court from requiring the parties to disclose at some stage prior to trial, such as in a pretrial statement or at a pretrial conference, whether they intend to present testimony as to their own physical or mental condition, and, if so, to make the presentation of that testimony conditional on the party's making available to the opposing party the substance of that testimony, including any treatment records pertaining thereto. *See* C.R.C.P. 16; *Phipps v. Sasser,* 74 Wash.2d 439, 445 P.2d 624 (1968).