682 P.2d 33 (1984)
Erin Lucele BOND; her parents, Wendell Anson Bond and Eileen Marie Bond; her brother, Ryan Ralph Bond; and her sister, Sydney Noterman Bond, Petitioners,
v.
The DISTRICT COURT In and For the COUNTY OF DENVER and The Honorable Roger Cisneros, One of the Judges Thereof, Respondents.
No. 83SA390.
Supreme Court of Colorado, En Banc.
April 30, 1984.
Rehearing Denied May 21, 1984.
*35 Frascona, McClow & Joiner, Nancy Alden Bragg, Boulder, for petitioners.
Greengard, Blackman & Senter, Richard D. Greengard, Holly E. Rebstock, Denver, for respondents.
NEIGHBORS, Justice.
In this original proceeding instituted under C.A.R. 21, the petitioners, who are the plaintiffs in a personal injury action filed in the Denver District Court against YMCA of the Rockies (YMCA), seek reversal of *36 the respondent judge's order denying their request for a protective order regarding discovery. Petitioners sought to prohibit discovery by YMCA of notes and records kept by their mental health therapists concerning psychological evaluations and treatments.[1] We issued a rule to show cause and now make the rule absolute.

I.
On August 20, 1982, Erin Bond, then four years old, was severely injured when she fell off a truck in which she and her family were riding and was run over by one of its wheels. The truck was owned and operated by YMCA. As a result of the incident, the child and members of her family filed suit against YMCA for negligence. In their complaint the petitioners seek recovery of damages for physical pain and suffering, mental pain and suffering, past and future medical and psychiatric expenses, loss of enjoyment of life, and loss of earnings.
During discovery proceedings, YMCA sought to obtain copies of all written notes and records made by the petitioners' therapists during psychological evaluations and psychiatric care and treatment of the petitioners at the Foothills Clinic. YMCA specifically requested "Any and all medical bills, statements, narrative medical reports, hospital records, medical test results, receipts for prescriptions, and any and all other written document or material concerning the Plaintiffs' alleged personal injuries and damages as a result of the incident which is the subject matter of this suit." Petitioners provided YMCA with an evaluation report prepared by Dr. Marshall Vary and Dr. Julie Brody of the Foothills Clinic. However, no notes or other records were made available. Apparently, Drs. Vary and Brody are not directly involved in treating the petitioners.
YMCA filed a motion for an order compelling discovery and the petitioners filed a motion for a protective order. A hearing on the motions was held on September 1, 1983. The respondent judge ruled:
"The Court is going to deny the Motion for Protective Orders; order that the records requested be furnished with the proviso they be kept confidential with the defendant. The Court in ruling this way is aware of the fact that the plaintiffs are the ones who are seeking recovery in this matter and they're asking for a substantial amount, and in order for the defendant to know what to defend against, it is necessary they not be limited to the information the plaintiff wants to reveal.
"I think they have the right to look at the records and they themselves determine what is something they can use or not use."
The petitioners then filed this original proceeding and we issued a rule to show cause.

II.
We recognize at the outset that, as a general rule, orders pertaining to pretrial discovery are interlocutory in nature and not reviewable in an original proceeding. However, we have made exceptions to the general rule when a pretrial discovery order causes unwarranted damage to a litigant that cannot be cured on appeal. See, e.g., Clark v. District Court, 668 P.2d 3 (Colo.1983); Hawkins v. District Court, 638 P.2d 1372 (Colo.1982); Tyler v. District Court, 193 Colo. 31, 561 P.2d 1260 (1977). If the petitioners are wrongly compelled to produce the requested medical records and notes and the information is disclosed, the damage will be done, regardless of any appeal. Therefore, our exercise of original jurisdiction is justified in the present case.

III.
We begin our analysis with a consideration of the discovery rules which are set forth in the Colorado Rules of Civil Procedure. *37 C.R.C.P. 26(b)(1) defines what information is discoverable:

"Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
(Emphasis added.) C.R.C.P. 26(c) provides that a court may issue a protective order under certain circumstances:

"Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) That the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."
In the circumstances of this case, there are two arguments why the therapists' notes and records are not discoverable under C.R.C.P. 26. First, the information is privileged and thus not discoverable under C.R. C.P. 26(b)(1). Second, good cause has been shown under C.R.C.P. 26(c) and thus a protective order should issue to protect the petitioners from embarrassment and oppression.

A.
The information sought by YMCA is privileged under the physician-patient or psychologist-patient privileges if these privileges have not been waived. Section 13-90-107(1), C.R.S.1973, provides that there are "particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases." Physicians and certified psychologists are included as persons who may not testify without the consent of their patient or client. Section 13-90-107(1)(d), C.R.S.1973 (1983 Supp.), provides in part:
"A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient...."
(Emphasis added.) A psychiatrist comes within the purview of this section. See People v. Taylor, 618 P.2d 1127 (Colo. 1980). Section 13-90-107(1)(g), C.R.S.1973, provides in part: "A certified psychologist shall not be examined without the consent *38 of his client as to any communication made by the client to him, or his advice given thereon in the course of professional employment;..." (Emphasis added.) The mental health therapists who evaluated and are treating the petitioners are persons within the meaning of these statutory provisions. The privilege, once it attaches, prohibits pretrial discovery as to privileged information as well as any testimonial disclosure in court. Clark v. District Court, 668 P.2d 3 (Colo.1983).
The respondent contends, however, that the petitioners waived the privilege by placing their mental condition in issue by bringing the personal injury lawsuit in which they have requested damages for mental suffering and expenses for psychiatric counseling. The privilege statute provides that a physician or certified psychologist may not testify without the patient's consent. This provision impliedly permits a waiver of the privilege. A waiver is a form of "consent" to disclosure which may be express or implied. Clark, 668 P.2d at 8. Waiver is established by a showing that the privilege holder has expressly or impliedly "forsaken his claim of confidentiality with respect to the information in question." Id. See also Mauro v. Tracy, 152 Colo. 106, 380 P.2d 570 (1963). In Clark, we held that the proper test for determining whether a patient has waived the privilege is "whether the privilege holder has injected his ... mental condition into the case as the basis of a claim or an affirmative defense." 668 P.2d at 10. The rationale for waiver in the context of a lawsuit is that it is inconsistent for the patient-litigant to base a claim upon his/her mental condition and then use the physician or psychologist privilege to prevent the opposing party from obtaining and presenting any conflicting evidence pertaining to that condition. See Clark, 668 P.2d at 10; Quinn, The Physician-Patient Privilege in Colorado, 37 U.Colo.L.Rev. 349 (1965); Annot., 44 A.L.R.3d 24, 51 (1972); 81 Am. Jur.2d Witnesses § 273 (1976). The petitioners concede they have injected their mental condition into the case as the basis of a claim. Therefore, we hold that the petitioners have waived their privilege by requesting an award of damages for mental suffering and expenses for psychiatric care. However, we conclude that the respondent court abused its discretion by denying the petitioners' motion for a protective order without balancing the respective interests of the parties.

B.
The public policy consideration which underlies the physician-patient and psychologist-patient privileges is to "enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the physician's disclosure of information imparted to him by the patient during the course of a consultation for purposes of medical treatment." Clark v. District Court, 668 P.2d 3, 8 (Colo.1983). The privilege encourages and protects the person seeking treatment. People v. Taylor, 618 P.2d 1127, 1140 (Colo.1980). This policy consideration is even more compelling in the therapist-patient relationship than in the physician-patient relationship. A physical ailment may be treated by a doctor whom the patient does not trust, but if a psychologist or psychiatrist does not have the patient's trust, the therapist cannot treat the patient. Taylor v. United States, 222 F.2d 398 (D.C.Cir.1955). "The very nature of psychotherapy is confidential personal revelations about matters which the patient is and should be normally reluctant to discuss. Frequently, a patient in analysis will make statements to his psychiatrist which he would not make even to the closest members of his family." 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 504[03] (1982) (quoting Sovenko, Psychiatry and a Second Look at the Medical Privilege, 6 Wayne L.Rev. 175, 184-85 (1960)). The mental health therapist's ability to help his patient is completely dependent upon the patient's willingness and ability to talk freely. See Proposed Fed.R.Evid. 504 advisory committee note. See also Louisell, *39 The Psychologist in Today's Legal World: Part II, 41 Minn.L.Rev. 731 (1957).
The petitioners provided YMCA with a "Report of Psychological Evaluation and Projected Costs for Psychiatric Care" which was prepared by Drs. Vary and Brody of the Foothills Clinic. The report includes the evaluation and diagnosis of the mental condition of each petitioner and detailed recommendations for the psychiatric treatment needed by each person, including the length of the proposed treatment and the projected costs. In order to prepare this report, Drs. Vary and Brody personally examined and evaluated the parents and Erin.
When it considered the petitioners' motion for a protective order, the respondent court had before it the affidavit of Dr. Vary who is the Director of the Foothills Clinic where the petitioners were evaluated and continue to receive treatment.[2] Dr. Vary believes that the treatment of the Bonds would be seriously undermined if their sense of trust in the psychotherapy process were to be eroded. Dr. Vary stated in his affidavit:
"[T]o further provide detailed notes and records of patient visits as requested by the Defendant would, in my expert opinion, cause serious and irreparable harm to Erin, Wendell and Eileen Bond for the following reasons:
"a. The Bonds are in a high degree of turmoil and confusion. The clarity and stability in their lives at the present time is in their psychiatric treatment. If notes or other records in connection with this treatment were used against them in an adversary proceeding, it could destroy a major portion of that clarity which would be highly detrimental to their emotional health and further treatment.
"b. The successful conduct of treatment of the patient in psychotherapy requires a feeling on the part of the patient that he or she can discuss openly and without consequence, issues of emotional importance. If that feeling is violated, the sense of trust and sanctity of the process will be eroded, and the successful treatment of the patient will be seriously undermined. This is true with the Bond family members.
"c. Very significant is the fact that the issues relating to the injury to Erin are complicated and involve distortions. If details of distorted perceptions become part of a legal proceeding, for example, Erin could become seriously and unnecessarily ladened with guilt to her severe detriment.
....
"11. Further, it is my opinion that it would be a serious mistake to turn over notes and other detailed material to either the attorneys for the Plaintiffs or the Defendants for the reason that the Bonds have been hurt enough and this would serve only to hurt them more."
It is clear from Dr. Vary's affidavit that the petitioners expected that information disclosed during therapy sessions with their psychiatrists and psychologists, as opposed to the ultimate diagnosis, would remain confidential. Likewise, the petitioners have established that revelation of the intimate details of their lives disclosed during therapy sessions would do harm to their treatment.
The policy considerations and the petitioners' evidentiary foundation lead us to conclude that there are compelling public policy reasons for keeping confidential any communications revealed during the mental health treatment of the petitioners *40 in order to preserve the effectiveness of that care. On the other hand, there are equally compelling policy considerations which encourage full disclosure during discovery. The purposes of pretrial discovery include: the elimination of surprise at trial, the discovery of relevant evidence, the simplification of the issues, and the promotion of expeditious settlement of cases. Hawkins v. District Court, 638 P.2d 1372 (Colo. 1982); Cameron v. District Court, 193 Colo. 286, 565 P.2d 925 (1977). In order to accomplish these purposes, the discovery rules are construed liberally. See Sherman v. District Court, 637 P.2d 378 (Colo. 1981). However, in adopting the rules of discovery this court recognized the need for a procedure to limit discovery in certain cases. C.R.C.P. 26(c) which authorizes the issuance of protective orders fulfills this purpose.
Under C.R.C.P. 26(c), a trial court, for good cause shown, may grant a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. The party who seeks to prevent discovery has the burden to show annoyance, embarrassment, or oppression. Liedholt v. District Court, 619 P.2d 768 (Colo.1980). What constitutes good cause depends upon the facts of each particular case. Curtis, Inc. v. District Court, 186 Colo. 226, 526 P.2d 1335 (1974). Discovery rulings are ordinarily within the discretion of the trial court. In re Marriage of Mann, 655 P.2d 814 (Colo.1982); Sanchez v. District Court, 624 P.2d 1314 (Colo.1981). C.R.C.P. 26(c) allows a trial court to exercise "broad discretion to manage the discovery process in a fashion that will implement the philosophy of full disclosure of relevant information and at the same time afford the participants the maximum protection against harmful side effects." 4 J. Moore & J. Lucas, Moore's Federal Practice ¶ 26.67 (1983). Accordingly, trial courts should not hesitate to exercise control over the discovery process. See Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).
In view of these competing interests, the respondent court should have balanced the petitioners' interest in protecting the confidentiality of their communications with their treating therapists against YMCA's interest in obtaining sufficient evidence to contest the damage claims for mental suffering and emotional distress.[3] The affidavit of Dr. Vary filed by the petitioners clearly demonstrates that production of the notes and records will cause them embarrassment and oppression. His affidavit establishes the sensitive nature of the therapist-patient communications and the possible adverse effects of disclosure upon the course of therapy and makes the petitioners' interest in protection from or restrictions upon disclosure particularly weighty.
The respondent court's order does not reflect that it took into account the petitioners' interests in arriving at its decision. Rather, the court stated that "in ruling this way [it] is aware of the fact that the [petitioners] are the ones that are seeking recovery in this matter and they're asking for a substantial amount, and in order for [YMCA] to know what to defend against, it is necessary [YMCA] not be limited to the information [the petitioners want] to reveal." Without evaluating the appropriateness of the conclusion reached by the respondent judge in his ruling, we make the rule absolute and remand the case to permit the respondent judge to reconsider his ruling, applying the correct balancing standard.[4]
DUBOFSKY, J., does not participate.
NOTES
[1] The petitioners, Ryan Ralph Bond, age eight years, and Sydney Noterman Bond, age four years, had not received a psychological evaluation or treatment when the hearing on the discovery issue was held by the respondent judge.
[2] In their brief in support of their petition which was filed November 3, 1983, the petitioners refer to the attached affidavits of two psychiatrists who are presently treating Mr. and Mrs. Bond and portions of Mr. Bond's deposition. YMCA filed a motion to strike any reference to these affidavits since they were not before the respondent court. We agree with YMCA. "The orderly administration of justice requires that parties first present all evidence and arguments to the trial court. Simply stated, we will not consider issues and evidence presented for the first time in original proceedings." Panos Investment Co. v. District Court, 662 P.2d 180, 182 (Colo.1983). Therefore, we have considered only that evidence before the respondent judge when he made his ruling.
[3] Some courts have constitutionalized communications by a patient to a psychiatrist or psychologist during treatment under the right of privacy rationale. See, e.g., Caesar v. Mountanos, 542 F.2d 1064 (9th Cir.1976); In re Lifschutz, 2 Cal.3d 415, 85 Cal.Rptr. 829, 467 P.2d 557 (1970); In re "B", 482 Pa. 471, 394 A.2d 419 (1978). We leave that issue for another day and elect to resolve this case in the context of discovery proceedings under C.R.C.P. 26. But see Martinelli v. District Court, 199 Colo. 163, 612 P.2d 1083 (1980).
[4] No suggestion is intended that the result reached by the trial court was necessarily incorrect. What is clear is that the trial judge did not utilize the correct standard in reaching the decision. The matter is entrusted to the trial judge's sound discretion, and it would not be proper for an appellate court to speculate whether the trial court would have ruled differently in any respect had the correct test been applied. Rather, the trial judge should be afforded an opportunity to reconsider the matter. In balancing the parties' interests the court can utilize such procedures as in camera hearings, in camera inspection of documents, and the employment of court-appointed experts where appropriate. The court should consider the flexible array of protective orders suggested by C.R.C.P. 26(c) to accomodate the needs of the party seeking discovery while protecting the legitimate interests of the party opposing discovery.