**Dalrie A. BERG, D.O., Plaintiff–Appellant,**

v.

**Jack SHAPIRO; Humana Hospital Mountain View, Inc.; John A. Hoffman; Thomas J. Blanchard, M.D.; and Does 3 through 10, Defendants–Appellees.**

No. 95CA1899.

Colorado Court of Appeals, Div. I.

April 17, 1997.

Rehearing Denied May 29, 1997.

Certiorari Denied Dec. 15, 1997.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1996 Cum.Supp.)

**60**

Sims & Boster, C. Garold Sims, Denver, for Plaintiff–Appellant.

Doherty, Rumble & Butler, P.C., L. Richard Freese, Jr., Peter J. Lucas, Denver, for Defendants–Appellees Jack Shapiro; Humana Hospital Mountain View, Inc.; John A. Hoffman; and Thomas J. Blanchard, M.D.

METZGER, Judge.

Plaintiff, Dalrie A. Berg, D.O., appeals the judgment dismissing his 42 U.S.C. § 1983 claim and his common-law claims against defendants, Jack Shapiro, Humana Hospital Mountain View, Inc., (the Hospital), John A. Hoffman, and Thomas J. Blanchard, M.D. We affirm the portion of the judgment dismissing the § 1983 claim, reverse the remainder of the judgment, and remand the cause for further proceedings.

After a preliminary investigation of complaints alleging that plaintiff, an obstetrician with privileges to practice at the Hospital, had engaged in "dangerous practices" which "threatened imminent patient harm," plaintiff's obstetrical privileges were suspended pending further investigation. That inquiry resulted in a recommendation that plaintiff's privileges be restored with educational and supervisory conditions.

Although plaintiff agreed in writing to these conditions, he did not comply with them and, instead, requested and then withdrew his requests for several hearings. Thereafter, he submitted a written voluntary resignation of his privileges to practice at the Hospital.

Later, he brought this action against the Hospital and various of its department-head physicians, asserting common law claims and a civil rights claim under 42 U.S.C. § 1983, and seeking consequential damages and mandatory injunctive relief to restore his obstetrical privileges at the Hospital.

Defendants filed a C.R.C.P. 12(b)(5) motion, arguing that, because the professional

peer review action did not constitute state action, plaintiff had failed to state a claim for relief under 42 U.S.C. § 1983. The trial court granted this motion.

Defendants also asserted that, because their actions were taken in good faith and afforded plaintiff due process, they were immune from liability under 42 U.S.C. § 11101 (1986) and § 12–36.5–105, C.R.S. (1991 Repl. Vol. 5B). After a several-day hearing on the immunity issue, the trial court found that all defendants were entitled to immunity from suit and, accordingly, dismissed the action.

## I.

■ Asserting that the Hospital's peer review action concerning his conduct constituted action taken under color of state law, plaintiff contends the trial court erred in dismissing his 42 U.S.C. § 1983 claim. We disagree.

■ The question of the existence of state action under § 1983 is whether the function performed has been "traditionally the *exclusive* prerogative of the State." *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418, 428 (1982)(emphasis in original).

Professional peer review at private hospitals has not been viewed as the prerogative of the state. *See, e.g., Loh–Seng Yo v. Cibola General Hospital*, 706 F.2d 306 (10th Cir.1983)(listing cases from circuits). *See also Even v. Longmont United Hospital Ass'n*, 629 P.2d 1100 (Colo.App.1981). Instead, as the court noted in *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173, 177 (5th Cir.1971), the purpose of peer review by a private hospital committee is "so that it can have confidence in the competence and moral commitment of its staff." Private hospitals had a right at common law to revoke the staff privileges of physicians for good cause. *Wong v. Stripling*, 881 F.2d 200 (5th Cir.1989).

Accordingly, because the Hospital was a private hospital, we conclude that the trial court was correct in dismissing plaintiff's § 1983 claim based on the actions of the peer review committee.

We are not persuaded that the decision in *Nicholas v. North Colorado Medical Center, Inc.*, 902 P.2d 462 (Colo.App.1995), *aff'd*, 914 P.2d 902 (Colo.1996) compels a different result. The plaintiff physician in that case asserted that the actions of the defendant hospital's peer review committee constituted anticompetitive conduct. Pointing to the elaborate hearing and appeal mechanisms in § 12–36.5–106, C.R.S. (1991 Repl.Vol. 5B), including direct review of decisions of the committee on anticompetitive conduct by the court of appeals, *see* § 12–36.5–106(10)(a), C.R.S. (1991 Repl.Vol. 5B), plaintiff argued that the hospital peer review committee did not have standing to challenge and seek review of the adverse determination of the Colorado State Board of Medical Examiners Committee on Anticompetitive Conduct. He argued that the hospital committee, acting in its peer review capacity, is a subordinate agency of the Colorado State Board of Medical Examiners Committee on Anticompetitive Conduct.

The division stated that the governing board of the hospital is "clothed with the status of a state agency," *Nicholas v. North Colorado Medical Center, Inc., supra*, at 466, when performing peer review activities. However, it went on to decide the standing issue on another ground.

Peer review concerning issues other than anticompetitive conduct was not at issue in that case, nor was the question whether peer review on other than noncompetitive conduct should be deemed action taken under color of state law for 42 U.S.C. § 1983 actions.

Here, in contrast, the decision of the peer review committee is not directly appealable to either the Colorado State Board of Medical Examiners or the court of appeals. The affected physician has the right to appeal the findings and recommendations of the committee to the governing board of the institution, organization, or society. Section 12–36.5–104, C.R.S. (1991 Repl.Vol. 5B).

Thus, we do not view the *Nicholas* decision to say that private hospital peer committee review action is taken under color of state law so as to trigger the provisions of 42 U.S.C. § 1983.

## II.

■ Plaintiff next contends that the trial court erred in granting the Hospital's motion for protective orders precluding discovery of the data underlying a consultant firm's report on the basis that the psychologist-patient privilege applied. We agree.

In 1992, before the peer review at issue here occurred, the Hospital's administration hired a consulting firm of psychologists, Somerville & Company, Inc., to study, analyze, and make recommendations regarding the general relationship between the medical staff and the administration. After individual meetings with several of the hospital's medical and non-medical personnel, the consulting firm issued the "Somerville Report."

In this lawsuit, plaintiff requested the report and, in depositions, also sought to learn the details underlying the report. The Hospital refused to provide the information, asserting the psychologist-patient privilege. Plaintiff then filed a motion to compel and the Hospital filed a motion for protective orders. Several months before the hearing, the trial court found that, while the information plaintiff sought was discoverable under C.R.C.P. 26, it was unconditionally privileged under § 13–90–107(1)(g), C.R.S. (1996 Cum. Supp.). Thus, the trial court entered a protective order and denied plaintiff's motion to compel.

■ Section 13–90–107(1)(g) provides: "[A] licensed psychologist ... shall not be examined ... as to any communication made by the client to such licensee or such licensee's advice given thereon in the course of professional employment...." A psychologist is defined as a person who practices psychotherapy. Section 12–43–201, C.R.S. (1991 Repl.Vol. 5B). Only communications involving psychotherapy are privileged. *See* B.B. v. People, 785 P.2d 132 (Colo.1990).

The purpose of the psychologist-client privilege is identical to that of the physician-patient privilege, namely, to "enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the [psychologist's] disclosure of information imparted to him by the patient during the course of a consultation for purposes of [psychological] treatment." *People v. District Court,* 719 P.2d 722, 724 (Colo. 1986). *See also Clark v. District Court,* 668 P.2d 3 (Colo.1983); B.B. v. People, supra.

Reviewing the totality of the circumstances, we conclude that psychotherapy was not practiced by the psychologist and, therefore, that the psychologist-client privilege does not apply in this case.

First, the psychologist who authored the report and conducted the interviews did not view his work to constitute the practice of psychotherapy. He testified that: "The last time I practiced psychotherapy would probably have been in 1975." He further testified that he did not provide psychotherapy services to his many corporate clients and stated specifically that he did not practice psychotherapy in his consultations with the Hospital concerning its management conflicts.

When asked whether, in connection with his work with organizations, he would characterize his practice as involving any "medical type" procedures, the witness responded in the negative. He described the nature of his services to the Hospital as "to investigate and provide counsel around a perception on the part of the board of trustees that there were inadequate and ineffective communications between and among the administration and medical staff."

■ Second, in our view, a corporation cannot be a client of a psychologist as it may be with other professionals such as attorneys and accountants. Although a corporation is treated as a "person" in the eyes of the law, this legal fiction does not correspond to the medical reality that a corporation, singularly, cannot have medical or psychological needs. Here, the corporation itself was asserting the psychologist-client privilege.

Further, we are not aware of any case law applying the psychologist-client privilege to a corporation or other business entity.

Because of the trial court's ruling, plaintiff did not have access to this discoverable information at the time of the summary judgment hearing. Therefore, the order granting defendants' assertions of immunity based on

good faith and dismissing the action must be reversed.

That portion of the judgment dismissing plaintiff's 42 U.S.C. § 1983 claim is affirmed. The remainder of the judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

STERNBERG, C.J., and HUME, J., concur.